LANE et al. v. ANDERSON et al.

(Circuit Court, D. Washington. April 22, 1895.)

No. 306.

EQUITY—INJUNCTION AGAINST GOVERNMENT OFFICERS:

By Act Cong. March 3, 1893 (27 Stat. 612), it was provided that a commission should be appointed by the president to select and appraise

certain portions of the reservation of the P. band of Indians, and, after obtaining the written consent of the individual Indians to whom certain parts of the land belonged, as to those lands, and of a majority of the band as to the remaining parts, to sell such lands for the benefit of the Indians. Certain Indians brought a suit to enjoin the commissioners from proceeding under the act, alleging that they had procured the required consents by fraud and intimidation. *Held*, that no injunction could be issued, the commissioners being officers of the government, exercising discretionary powers.

This was a suit by Thomas Lane and others against James J. Anderson and others to restrain them from acting as commissioners under the act of congress of March 3, 1893. Defendants demurred to the bill.

F. Campbell, for complainants.

F. C. Robertson, for defendants.

GILBERT, Circuit Judge. The complainants, who are Indians of the Puyallup tribe of the state of Washington, bring a bill for an injunction against the defendants, who are the commissioners appointed under the act of congress of March 3, 1893, to lay off and sell a tract of land, a portion of the Puyallup reservation, consisting of 598.81 acres adjoining the city of Tacoma. The act of congress of February 8, 1887 (24 Stat. 388), had provided for the allotment of lands in severalty to Indians upon certain reservations whenever, in the opinion of the president of the United States, the land of any reservation should be deemed advantageous for agricultural and grazing purposes, and authorized him to cause such reservation, or any part thereof, to be surveyed, and the lands allotted to the Indians located thereon. Under this law the lands of the Puyallup reservation were surveyed, and the greater portion thereof was allotted to the Indians of that tribe. Among the allottees were the complainants in this suit. The tract in controversy in this suit was not included in the allotment, but remained unpartitioned. On March 3, 1893 (27 Stat. 612), an act was passed making appropriation for current and contingent expenses, and fulfilling treaty stipulations with Indian tribes, in which, on page 633, it was enacted:

"That the president of the United States is hereby authorized immediately after the passage of this act to appoint a commission of three persons, and not more than one of whom shall be a resident of any one state, and it shall be the duty of said commission to select and appraise such portions of the allotted lands as are not required for homes for the Indian allottees; and also that part of the agency tract, exclusive of the burying ground, not needed for school purposes in the Puyallup reservation, in the state of Washington. And if the secretary of the interior shall approve the selections and appraisements made by said commission, the allotted lands so selected shall be sold for the benefit of the allottees, and the agency tract for the benefit of all the Indians, after due notice at public auction at not less than the appraised value for cash, or one-third cash, and the remainder on such time as the secretary of the interior may determine, to be secured by vendor's lien on the property sold. It shall be the duty of said commission, or a majority of them, to superintend the sale of said lands, ascertain who are the true owners of the allotted lands, have guardians duly appointed for the minor heirs of any deceased allottees, make deeds of the lands to the purchasers thereof, subject to the approval of the secretary of the interior, which deeds shall operate as a complete conveyance of the

land upon the full payment of the purchase money; and the whole amount received for allotted lands shall be placed in the treasury to the credit of the Indian entitled thereto and the same shall be paid to him in such sums and at such times as the commissioner of Indian affairs, with the approval of the secretary of the interior, shall direct: provided, that the portion of the agency tract selected for sale shall be platted into streets and lots as an addition to the city of Tacoma, and sold in separate lots, in the same manner as the allotted lands, and the amount received therefor, less the amount necessary to pay the expenses of said commission, including salaries shall be placed to the credit of the Puyallup band of Indians as a permanent school fund to be expended for their benefit: and provided further, that the Indian allottees shall not have power of alienation of the allotted lands not selected for sale by said commission for a period of ten years from the date of the passage of this act and no part of the allotted land shall be offered for sale until the Indian or Indians entitled to the same shall have signed a written agreement consenting to the sale thereof, and appointing said commissioners, or a majority of them, trustees to sell said land and make a deed to the purchaser thereof; and no part of the agency tract shall be sold until a majority of said Indians shall consent thereto in a written agreement, which shall also constitute said commissioners, or a majority of them, trustees to sell said land, as directed in this act, and make deeds to the purchaser for the same. The deeds executed by said commission shall not be valid until approved by the secretary of the interior, who is hereby directed to make all necessary regulations to carry out the purposes of the foregoing provisions," etc.

The complainants allege that the defendants, in order to induce the requisite number of the members of the Puyallup tribe of Indians to consent to the sale of lands as contemplated in the act last quoted, falsely represented to them that the lands would be sold, and the proceeds thereof would be paid to them according to their respective interests therein; and that others of the tribe, who were unable to read and write the English language, were by the defendants induced to sign, and to allow their names to be signed to, a paper purporting to give their consent to the sale, by the use of money paid by defendants, and promises made by defendants that they would receive the money derived from the sale; and certain others were induced to consent by threats and intimidation. And they further allege that the defendants are surveying the tract in controversy, for the purpose of laying the same off into lots and blocks, and selling the same at public auction, in pursuance of the act, and that thereby clouds will be cast upon their title, and they will be involved in a multiplicity of suits; and they pray that the commissioners be enjoined from such proceeding.

The defendants demur to the bill for want of equity, and the question arises upon the demurrer whether an injunction will lie to restrain the defendants as prayed for in the bill. It is the general rule that, where national officers are vested with certain discretionary powers by virtue of their office, their discretion cannot be interfered with either by injunction or mandamus. It is otherwise where their duties are of a character purely ministerial. In Marbury v. Madison, 1 Cranch, 166, a citizen had been nominated, confirmed, and appointed a justice of the peace for the District of Columbia, and his commission had been made out, signed, and sealed. Nothing remained to be done except delivery, and that duty was imposed by law on the secretary of state. It was held that the performance of that duty might be enforced by mandamus.

The court, after a mature consideration of the questions involved, said:

"The conclusion from this reasoning is that, where the heads of departments are the political or confidential agents of the executive, merely to execute the will of the president, or, rather, to act in cases in which the executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable; but where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured has a right to resort to the laws of his country for a remedy."

In Kendall v. U. S., 12 Pet. 534, a suit had been brought in the circuit court of the District of Columbia to issue a writ of mandamus to the postmaster general to compel him to do a merely ministerial act, which the relator had the right to demand, and as to which the postmaster general had no discretion. The supreme court held that a mandamus was properly issued, since it did not seek to direct or control the postmaster general in the discharge of any official duty partaking in any respect of an executive character, but to enforce the performance of a mere ministerial act, which neither he nor the president had any authority to deny or control. In the case of Mississippi v. Johnson, 4 Wall. 498, the court defined a ministerial duty as follows:

"A ministerial duty, the performance of which may, in proper cases, be required of the head of a department by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law."

In Gaines v. Thompson, 7 Wall. 347, it was attempted to enjoin the secretary of the interior and the commissioner of the land office from canceling an entry upon land. The court, after quoting the definition of a ministerial duty from the decision last cited, proceeded in these words:

"The action of the officers of the land department with which we are asked to interfere in this case is clearly not of this character. The validity of plaintiff's entry, which is involved in their decision, is a question which requires the careful consideration and construction of more than one act of congress. It has been for a long time before the department, and has received the attention of successive secretaries of the interior, and has been found so difficult as to justify those officers in requiring the opinion of the attorney general. It is far from being a ministerial act under any definition given by this court."

In Litchfield v. Register, 9 Wall. 577, the complainant claimed to be the owner of land which the officers of the land department were treating as public lands, and he sought to enjoin them from entertaining applications and proofs of pre-emption thereon. Mr. Justice Miller, in denying the injunction, said:

"The principle has been so repeatedly decided in this court that the judiciary cannot interfere either by mandamus or injunction with executive officers, such as the respondents here, in the discharge of their official duties, unless those duties are of a character purely ministerial, and involving no exercise of judgment or discretion, that it would seem to be useless to repeat it here."

Applying the doctrine of these decisions to the case under consideration, it is clear that the injunction must be refused. The

commissioners are officers of the United States. They are acting under a statute of the United States which invests them with discretion to do the acts which are complained of. It may be that they are proceeding in an unlawful manner, as alleged in the bill, but it does not follow that the complainants may resort to the aid of another branch of the government to interfere with their action. If these lands shall be wrongfully sold, and the complainants have rights which shall thereby be invaded, they will undoubtedly be in a position to require that the grantees of the lands so sold shall be held to stand in such attitude to the title as shall conserve the rights of those justly entitled thereto. But they are not entitled to relief in this proceeding. The demurrer to the bill must be sustained.