The opinion of the court was delivered by
Nicholes, C. J.
In its petition to the Civil District Court the Board of Health alleged that it was a public corporation, created for the purpose of establishing, controlling and administering all maltters of local sanitation in the City of New Orleans, including the regulation of the sale, and offering for sale, of all articles in this city affecting the public health and safety, and, in addition thereto, is charged with the supervision or authority over the meat inspection service and sanitary regulations at the slaughtering pens, or abottoir, in the Parish of Sit. Bernard, with respect to all meat intended for human consumption within the City of New Orleans, and had, to the best of its ability, and as far as its revenues and means would permit, faithfully carried out the duties imposed upon it by the laws of this State, and particularly Act No. 192 of the acts of the Legislature of this State for the year 1898.
That in order to maintain and operate said Board, the said Act No. '.192 had empowered relator to elect a chairman who should be the health officer for the City of New Orleans, and fix and pay his salary *1265 annually; elecit a sanitary officer who should enforce and execute the requirements of relator in all matters of sanitation, and also act as secretary and fix and pay his salary annually, and, further, to employ the necessary force of sanitary police and inspectors to ascertain the .sanitary condition of all premises, places, or things, in New Orleans, and which might effect the public health and safety; the necessary scientists to examine, chemically and bacteriologieally, articles and things affecting the public health and safety, and the necessary clerks, and purchase and incur expenses for the necessary disinfectants, and means for abating all nuisances found and detected; and generally to incur the necessary expense for performing the important functions imposed upon relator.
That excepting the revenues arising from the collection of fees imposed for the issuance of permits, recordation of deaths, births and marriages, and forfeitures imposed for violation of sanitary laws and ordinances, the probable receipts from which, for the year 1900, were estimated at twenty-six thousand, five hundred and sevenity-four 49-100 dollars, 'an amount totally and utterly inadequate to meet the necessary expenses of relator in performing, ills imperative duties and functions — relator was without means. That in order to provide such means, and to maintain and operate the Board, the said Act No. 192, referred to above, had made it the imperative and absolute duty of the City of New Orleans to provide relator with ample means, and had declared that all necessaiy expenses, costs and charges, of local sanitation incident to the operation and maintenance of relator should be borne by the City of New Orleans, and in ease the fiscal authorities should refuse to budget for, appropriate or pay the same, relator should have right (to the writ of mandamus before a court of competent jurisdiction to compel the proper action of the Common Council of the City of New Orleans and the said City of New Orleans.
That in due season relator adopted a budget- of necessary expenses for the ensuing year, 1900, and furnished -a -statement of the fees, forfeitures and sums of money received during the present year, 1899, -as well as an estimate of the probable receipts of the ensuing year, 1900, verified by the oath of the chairman and secretary of relator, and forwarded the same to the Mayor and Common Council of the City of New Orleans in time to be included within the budget *1266 of receipts and expenses of the City of New Orleans for th<3 year 1900, ‘an exact copy of which budget relator attached and annexed to its petition and made part thereof; that ithe amount demanded by relator from the City of New Orleans and the Common Council was twenty-two thousand, two hundred and nine 85-100 ($22,209.85) dollars, and was, together with its other revenues, absolutely necessary to enable relator to operate.
That notwithstanding the demand made by relator, as shown by its said budget, the Common Council for the City of New Orleans, the Mayor and the said City of New Orleans had refused to budget for or -appropriate for the maintenance and operation of relator a greater sum than' thirteen thousand ($13,000.00) dollars, which, together with its other revenues, was an amount grossly and utterly inadequate and insufficient to cover the necessary expenses, costs and charges to be incurred by relator for the ensuing year of 1900, and of itself showed a disregard of the rights of relator and an abuse of ‘any discretionary power which ithe fiscal authorities of the City of New Orleans might have had in the premises • although relator specifically denied that -any of the matters set out in its petition were within the discretion of said fiscal authorities, ‘and always asserted and charged that the amount ito be budgeted for was fixed by law within the discretion of relator as determined by the necessary expenses, costs and charges incurred and to be incurred by relator.
That relator was entitled to ¡the writ of mandamus, and was without adequate remedy at law to obtain the relief sought therein.
That said budget of the City of New Orleans was not yet published according ¡to law.
In view of the premises, petitioner prayed that a writ of alternative mandamus might issue, directed to the Common Council of the City of New Orleans, through its president, and to each member thereof, and to the Mayor of said city, commanding them to amend the budget proposed or adopted by them for the year 1900 by including therein for the year 1900,' as the appropriation of the Board of Health for the City of New Orleans, the full sum of twenty-two thousand, itwo hundred and nine and 85-100 dollars, and that after due proceedings bad, there might be judgment in favor of relator, the Board of Health for the City of New Orleans, and against the *1267 Common Council of the City of New Orleans and the Mayor of said city, making said writ peremptory.
An alternative writ of mandamus issued as prayed for.
The defendants, by way of exception to plaintiff’s petition, pleaded that same disclosed no cause of action against defendants. •
If same should be overruled, then expressly reserving the benefit of same, defendants answered that iit was not the ministerial duty of defendants to make the appropriation prayed for; that the Council had already made ample provision in the budget of 1900 for the expenses of relator, and the amount so to be budgeted was discretionary with said Council; that all the revenues for 1900 had been dedicated already to various purposes as set forth in the-budget of expenditures for 1900, and could not be diverted or changed without violating the law (and they annexed to their answer copies of Ordinances 15,789 and 15,790, C. S., and made same part of their return); that defendants had no fund at their disposal out of which the increased appropriation prayed for by relator could be made.
They prayed that the demand of relator be rejected, and the suit be dismissed at relaitor’s costs.
The District Court rendered judgment refusing the mandamus, and the plaintiff appealed.
Opinion.
The Board of Health for the City of New Orleans owes its origin to the fifth section of Act No. 192 of 1898, in which iit was enacted that the Council, or legislative body of each and every incorporated municipal corporation of the 'State, should establish and organize a town or city board of health in the manner following:
The said Council or legislative body shall, immediately after the promulgation of -the act, or soon thereafter as may be practicable, elect or appoint five persons in said municipality to be members of the municipal board of health, * * * said persons, when so elected or appointed, shall constitute the city or town board of health. * * * The Council or legislative body shall provide ample means for the maintenance and operation of said board. * * * The said city boards shall elect a chairman who shall be a duly registered and licensed physician, who shall be health officer of the town or municipality, who shall serve in said capacity, exercise the powers and perform the duties usual and incident to such officers *1268 in similar organizations. The chairman shall receive such an annual salary as the Board of Health of said municipality may fix and pay. The said Board of Health shall have power to appoint a sanitary officer, whose duties shall be to enforce the requirements of said Board in all matters of Sanitation, and also to act as secretary. His salary shall be fixed and paid by the Board.
The- sixth section of the act declared that no member of the Board, with the exception of the chairman and sanitary officers, should receive any pay or emoluments in any way, for the services rendered, as a member of the Board, and that no member should be in any way directly or indirectly interested in any contract for supplies to be furnished, or services to be rendered, to said Board.
The seventh section of the act declared that all necessary expenses, costs, and charges of local sanitation, should be borne by the parish, city, or town, in which the local Board should be established, and in case the fiscal authorities thereof should refuse to budget for, or appropriate or pay the same,-the local Boards should have the right to ithe writ of mandamus before a court of competent jurisdiction, to compel the proper action by said parish, city or town authority.
The ninth section declared that all laws, or parts of laws, in conflict with, inconsistent with, or superseded by, the provisions of the act, were thereby repealed, but -all laws, of parts of laws, parish or city ordinances, State Board of Health ordinances, State, parish or municipal rules and regulations then existing, and not in conflict with, or inconsistent with, or superseded ■by the provisions of the act, were continued in full force and effect, and the -act should not be construed or interpreted so as to deprive the State Board of Health, or the local boards of health, of any powers or authority they might have under existing laws, except in so far, as those powers or authority might be modified or changed by the provisions of the act, and then only to the extent of thé modification or change; that all those parts of Special Act No. 172, of 1874, and Special Act No. 110, of 1878, and Special Act No. 56, of 1896, and of all other special acts relating to boards of health in towns, cities or parishes, and Act No. 92, of 1882, which were in conflict with, inconsistent with, or superseded by the provisions of the new act, were thereby repealed, but all other parts of said acts, not in conflict with, inconsistent with, or superseded by the latter, were continued iii full force and effect.
*1269 By the same section the Board of Health for the City of New Orleans was granted the exclusive right to the collection of all fees and charges, then being made by the existing State Board of Health within the City of New Orleans, other -than those accruing from the coal oil inspection and the registration of physicians, midwives and dentists.
By the tenth section of the act it was enacted and ordered that .the existing State Board, and local Boards of Health, should turn over to the new Boards all the assets, property, records, or other things and matters then in their charge and keeping, and thereafter the new Boards should be considered as successors in office to the old Boards, and all rights, actions, claims, or things of value possessed by the old Boards, should become vested in the new Boards, with full right and power to hold, prosecute and defend the same, just as if ho change had been made in said Boards.
Prior -to the passage of this act of 1898, there existed in the State of Louisiana a health Board known as the “Stalte Board of Health,” which combined within itself not only duties of a general character, in which the State at large was interested, but also duties of a local character -affecting especially the Ciity of New Orleans, duties which, under the new law, have been made to devolve upon the City Board of Health for that city.
It was a composite Board in its membership, and in its duties. The present City Board is as to local matters, successor of -the former State Board, and now forms part of the city government.
The record shows that, for its use for the year 1899, the Common Council appropriated and paid over to the City Board 'the sum of twenty thousand dollars; that it received from various sources of revenue over twenty-six thousand dollars, and that the excess of expenditures, over receipts for thait year, was seven hundred and eight dollars.
At a meeting of the City Board (referred to in its proceedings as the annual meeting of the Board), which took place on September 4th, 1899, the Board elected or appointed one chairman, one sanitary officer, one bacteriologist, one chemist, one attorney, one chief meat inspector, one superintendent of sanitary police, one recorder of births and deaths, one special inspector, one porter, seventeen sanitary inspectors, and thirteen assistant meat inspectors.
*1270 It is stated in the minutes of the proceedings of that day that the salaries of the general clerk, and the assistant clerk, were raised to eighty-five dollars a. month, and that of the porter to forty dollars, from which it would appear that the salaries and pay of ;the officers and employees named, had been fixed by prior action of the Boai’d.
At a meeting of the City Board, held on the 4th of December, 1899, it made out an estimate of anticipated approximate revenues and necessary expenditures for the year 1900. The minutes recite that this estimate was “adopted by the Board as its budget of necessary expenditures and approximate revenues' for the year 1900.” It also made out a statement of the receipts and expenditures of the Board for ithe year 1899.
The chairman, secretary and treasurer, were directed to attest the correctness of this statement before a notary public, and to submit it together with a statement explanatory of the same to the budget committee of the City Council, the City Council and thé Mayor; and a resolution was adopted that should the City Council fail to provide adequately for the Board’s needs in the city budget for '1900, the Board, through its chairman, should mandamus the Council.
The following admission appears in the record:
It is admitted by - the respondents and defendants herein that relator, the Board of Health for ithe City of New Orleans, adopted at its regular meeting on December 4th, 1899, as its budget of its necessary expenses, costs, and charges, for the year 1900, the budget annexed to the petition herein and marked “A,” and forwarded the same ito the Mayor and City Council on December 5th, 1899; that the said Board at the same time also made to the defendants, the City Council and Mayor, a detailed statement, verified by the oath of the chairman and secretary thereof, of all-fees, forfeitures, and sums of money received by the said Board during the year 1899, a duly certified copy of which statement is annexed to relator’s petition herein, marked “B,” as well as a detailed statement, verified by the oa.th of the chairman and secretary of said Board, of the expenses, costs and •charges incurred and expenditures during ithe year 1899, a duly certified copy of which statement is annexed to relator’s petition and marked “C,” together with an explanatory statement, also verified by the oath of ithe chairman and secretary of the said Board, marked “D,” and annexed to relator’s petition herein, as well as an estimate of the probable receipts of the said Board for the year 1900; that said *1271 budget estimate and statements, marked “A,” “B,” “O,” and “D,” together with the resolutions of the said Board of Health adopting the same, all of which appear and are of record in the minutes and proceedings of said Board at its meeting on December 4ith, 1899, were read, line for line, by the said City Council for the. City of New Orleans at its meeting of December 5th, 1899, before the adoption of the said Ordinance No. 15,790, O. S., or any part thereof; that ithis cause was instituted on December 13th, 1899, and the writ issued herein, issued and served on the defendant therein on the same day, and that said Ordinance No. 15,790, C. S., was promulgated for the first time after December 15th, 1899; that the'exhibit marked “E,” and offered and filed in evidence herein, is a duly certified copy of the resolutions as the same appear by the minutes of the said Board of Health of its said meeting of December 4th, 1899, adopting said exhibits marked “A,” said exhibits marked “B,” “C,” and “D,” 'and referred to above; that all of said admissions apply to Ordinance No. 15,789, O. S.”
The ordinance here referred to is the budget of the City of New Orleans for the year 1900.
In this budget the City Board of Health appears budgeted for the sum of thirteen thousand dollars.
The City Board contends that the amount budgeted for should have been the sum of twenty-two thousand, two hundred and nine dollars and eighty-five cents, and .ithat the City Council should be required, by mandamus, to increase the amount budgeted for to that sum.
That the amount called for is the result of a very careful examination into what amount will have to be supplied by the city to enable it to meet its necessary expenditures and enable it to efficiently perform its duties and functions; that having reached its conclusions upon ‘that subject, and transmitted them to the Common Council, the latter had no alternative but to adopt them and provide for meeting the expenditures to the amount stated in its budget; ithat it had under the law, no discretion in the matter, no power or revision, alteration or correction, and it cites authorities which it contends sustains the correctness of that proposition.
Without attempting to analyze these different decisions, it suffices to say that 'the General Assembly has not fixed, itself, any specific *1272 amount as that up to which the City Board was authorized to malte expenditures, and the binding force of which the city was legally bound to recognize, and that in Louisiana the municipal corporations of the State, have not been left free to determine the amount for which taxes can be raised to ensure efficient public service in any particular direction, but are rigidly held within certain hounds by force „of express constitutional restrictions.
It may be that the effect • of these restrictions will be to hamper those charged with public duties in the full execution of their trusts, but where the Constitution has ordained the citizen has but to obey, and to discharge his duty as best he may, with the limited instrumentalities placed in his hands, and that is the precise situation in which the authorities of the City of New Orleans find themselves to day. As a matter of course the City Board having been entrusted with the special and important duty of guarding the public health, keenly appreciates a situation which might leave it crippled in its action, but it overlooks the fact that the preservation of the public health is only one of the many objects which call for legal legislative action, and it does -not full realize the difficulties of those who, with small means, have to deal, not with a single one of these subjects, but a number. The Council has ¡to deal with these matters under a more extended sphere of obligation than does the City Board of Health, and it is in better position than is the Board to know how ¡to apportion the monies which are in its hands..
We do not agree with counsel of the Board ¡that the Legislature of ¡the State intended to confer upon it an unrestricted power of determining for itself how much money it should spend in any given year for health purposes. Its intention is, obviously, that the Board and the Council should act together for the attainment of an object in which ¡they have a common interest.
We see no more ground for independent action by the Board of Health, than there would be for the department of public improvements, or any other department.
We think the correct view of this matter is that found in the fourth section of Act No. 80, of the Extra Session of 1877, though modified to some extent.
In that section it was declared that “the Board of Health should have power and authority on the concurrence of the city council, to *1273 provide for, protect, and preserve, by adequate means, the health and salubrity of the city- of New Orleans, and in the exercise of such power and authority, might, with the assent of the city council, incur such necessary and reasonable expense, as occasion plight warrant, which expense should be paid by the city of New Orleans; after approval of the same, by the Board, out of the budget appropriation as therein provided, and no expense beyond such budget might or should be incurred, chargeable upon the city of New Orleans; that iit shall be the duty of the Board to forward to the Mayor and city council, annually, and in time to be included in the budget of expenses of the city of New Orleans, an estimate of the probable sum required lio meet the expenses aforesaid, for the ensuing year and other expenses provided for in that Act, to be paid by the city of New Orleans, and said estimate should include the salaries of the sanitary inspectors appointed under existing laws for the different districts of said city, as well as the reasonable expenses of said sanitary inspectors for rent of office and stationery for their official duties, and th,e said Board should also, at the same time, make to the city council, a detailed statement, verified by the oath of the President and Secretary thereof, of all fees, fines, forfeitures and sums of money which had been received by the said Board during the past year, as well as the estimate of the probable receipts for the ensuing year, and it should be the duty of the Mayor and Council, after considering such report and estimate, to make such appropriation as might be by them deemed necessary, for the expense of said Board and place it on the annual budget of expenditures.”
Any course of action making it obligatory upon the Common Council, which is the body called on to supply funds and to make payment, to register and enforce demands upon it for money, derived from taxation for an amount over which it. has no check, would be subversive of Ithe theory of good government.
A construction of law which would lead up to the authorization of such a course of action by the General Assembly, would have to rest upon very express language, if it could be justified at all, where municipal- corporations are tied down by constitutional limitations in 'their power of levying taxes.
The Board of Health have not only fixed the,.number of employees in their service, but they have determined, without any consultation with the Council, the amounts which should be paid to them for their *1274 service, when, by the 19 th section of the city charter of 1S9C, it is provided that the Council should fix the compensation of every officer of the city or of the State whose services are by-law, to be paid by the city of New Orleans, except such as were fixed in that charter, and regulate ilhe number and compensation of all persons on the pay roll of the city of New Orleans.
Appellants say that their employees do not figure on the pay rolls of the city of New Orleans, but upon those of the Board of Health. That may be true as a matter of books, and so long as these employees are paid ouifc of funds received by the Board from sources other than the city, but it is not true when they are in fact to be paid actually by the city.
The city in its action has to be guided not only by the propriety of the expenditures which the Board proposes to, or will be called upon to make, but also by a full consideration of the demands which will be made upon the limited resources at its command, from ¿11 quarters. It has notfc refused to act in the premises; it has made an appropriation of thirteen thousand dollars for the Board. That may be an insufficient amount to insure full results, but we are bound to assume that it is all the city can spare for thalt particular purpose, at least, for the present.
We have no right to assume that it is any less solicitous for the health of the city than the Board itself is. As matters stand, and if the appropriation be too small, the Board will have to diminish its force and curtail its expenses.
The Board calls our attention to the fact that several large amounts which were included in the city’s budget for 1900, as amounts which it would have to pay, will not be called for by reason of judgments, decreeing the non-liability of the city, and by reason of other causes, and it claims the right to have those liberated amounts budgeted against, in its favor. A similar claim was advanced on behalf of the relator in the case of State ex rel. Foy vs. The Mayor, 49th Ann., 946.
It may be true that there are amounts now liberated, but it by no means follows that they should legally be applied to the increasing of the appropriation in favor of the relator.
This court could only have, at best, a partial view of the situation. There might be others equally entitled, if not more entitled to have those liberated funds enure to their benefit, than the relator would. (Eager, Ellerman & Co. vs. City of New Orleans, 36 Ann., 937).
*1275 That is a matter for the Council to examine into and pass upon. In Moore vs. City of New Orleans, 32 La. Ann., 726, this court said:
“We are not vested with power to frame a budget for the city of New Orleans, to assume the administration of its affairs, to constitute ourselves, in effect, the Mayor and Common Council of the cilty of New Orleans, for the-purpose of determining what are or are not reasonable allowances for the performance thereof. These matters are confided by the law to the discretion and control of the corporate authorities.”
“They have actually framed their estiriSate and budget of revenues and expenditures, and have appropriated the whole of the ten mill tax to administrative purposes. If they are extravagant or excessive, the remedy lies not with the judiciary but with the Legislature.”
We see no aulthority in this court to order the Common Council to enlarge the amount placed by it on its budget for the prospective expenditures of the city Board of Health. That amount is to be determined by the City Council, after consideration of facts and circumstances which could not possibly be examined into legally by this court, in a mandamus proceeding, if at all.
Entertaining the view we do, as to the absolute right of the relator to be placed on the budget for any fixed amount, we are relieved from the consideration of several matters which take up a large part of the briefs both of the city and of the Board of Health.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from, be and the same is hereby affirmed.