(49 South. 635.)

No. 17,518.

STATE ex rel. GENTRY v. MAYOR, ETC., OF VILLAGE OF DODSON.

In re MAYOR, ETC., OF VILLAGE OF DODSON.

(April 26, 1909. Rehearing Denied May 24, 1909.)

1. STATUTORY PROVISIONS.

Section 15 of Act No. 136, p. 228, of 1898, reads as follows: "The mayor and board of aldermen of every city, town and village shall have the care, management and control of the city, town or village and its property and finances, and shall have power to enact ordinances for the purposes hereinafter named and such as are not repugnant to the laws of the state and such ordinances to alter, modify and repeal and they shall have power to provide for the election of such municipal officers other than those required by this act as may be found necessary, to prescribe the duties and to fix the compensation of all officers and employés, and to require bonds with sureties for the performance of duties from all officers and employés."

2. CONSTITUTIONAL LAW (§ 63*)—MUNICIPAL CORPORATIONS (§ 63*)—DELEGATION OF POWER TO MUNICIPALITY—REVIEW BY COURTS.

The plaintiff, alleging that he was prevented from performing the duties and enjoying the emoluments of the office of marshal of the village of Dodson by the wrongful, illegal, fraudulent, malicious acts of the mayor and board of aldermen of that village in fixing by ordinance his bond at the unreasonable and outrageous sum of $3,000, and the salary of the marshal at the small, ridiculous, unreasonable, and unjust sum of $1 per month, prayed the district court to declare the ordinance null and void because illegal and unreasonable, and that they be compelled, by mandamus, to fix a reasonable bond and reasonable compensation. The district court made the writ peremptory and ordered the defendant to fix the bond in a sum not exceeding $1,000 and the marshal's compensation at a sum not less than $50 per month.

The defendants appealed to the Court of Appeal, but on appeal the judgment was affirmed. The judgment has been brought before us for review under a writ of certiorari or writ of review. That judgment and the judgment of the district court are reversed, and plaintiff's suit dismissed.

This court finds: That the acts of defendants were taken under an express power and authority delegated to them without restriction or limitation by the General Assembly in sections 15 and 19 of Act No. 136, p. 235, of 1898.

That the General Assembly was authorized under the Constitution to make such delegation of power and authority. That the defendants have acted within the power and authority dele-

gated. That no Constitution or legal right of the plaintiff has been violated. Under the circumstances disclosed, the courts are without constitutional power or authority to interfere and to substitute their judgment and discretion in lieu of those of the body to which they have been legally confided.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 109; Dec. Dig. § 63;* Municipal Corporations, Cent. Dig. § 155; Dec. Dig. § 63.*]

(Syllabus by the Court.)

Mandamus by the State, on relation of R. R. Gentry, against the Mayor and Board of Aldermen of the Village of Dodson. The district court awarded a peremptory writ and the judgment was affirmed by the Court of Appeal, and the Mayor and Board apply for certiorari or writ of review to the Court of Appeal. Reversed, and suit dismissed.

See, also, 121 La. 357, 46 South. 354.

Kidd & Long, for applicant. Hudson, Potts & Bernstein, for respondent.

### Statement of the Case.

NICHOLLS, J. This case was before us under the number 16,956, on an appeal taken from a judgment rendered therein in the district court for the parish of Winn. The court, on examination of the record, having ascertained that the appeal was not properly before it for want of jurisdiction, it was transferred to the Court of Appeal, parish of Winn. It was heard and decided, and it is now before us on a writ of review of that judgment.

The judgment brought up in that court for review was as follows:

"The relator was duly appointed marshal of the village of Dodson by the Governor of the state to fill the vacancy caused by the resignation of his predecessor. It appears that the relator belonged to the political faction to which a majority of the members of the board of aldermen were opposed, and shortly after his appointment the said board of aldermen met, and by a majority vote adopted two ordinances, one of which fixed the bond of the marshal at $3,000, and the other fixed his compensation at $1 per month, $1 for every arrest where a conviction was had and a fine exceeding $5 was collected, and 10 per cent. on all fines collected.

"The relator, alleging that he was prevented from performing the duties and enjoying the emoluments of his office by the wrongful, illegal, fraudulent, malicious, and unreasonable acts of the mayor and board of aldermen in fixing his bond at the unreasonable and outrageous sum of $3,000, and in fixing the salary of the marshal at the small, ridiculous, unreasonable, and unjust sum of $1 per month, prayed that said ordinance be declared null and void, because illegal and unreasonable, and that the mayor and board of aldermen be compelled by the writ of mandamus to fix a reasonable bond and reasonable compensation for the marshal.

"The writ was issued, and the mayor answered, admitting that the ordinances complained of were illegal and unreasonable and were passed for the sole purpose of forcing the plaintiff to resign his position as marshal of the village of Dodson, and he avers that the ordinances were passed despite his earnest disapproval.

"The other defendants, the three members of the board of aldermen who voted for said ordinances, answered defending their conduct in the premises, asserting and maintaining the reasonableness and legality of the ordinances, which they declared were adopted in the interest of an economical reform, and they squarely challenged the power of the court to coerce them in the matter of fixing either the bond or the compensation of the marshal, declaring that they were vested by law with the sole discretion to perform such duties, and that the court is without jurisdiction to inquire into the matter or to control them. After the trial the district court made the writ peremptory and ordered defendants to fix the bond in a sum not exceeding $1,000, and the marshal's compensation at a sum not less than $50 per month.

"The defendants prosecuted an appeal to the Supreme Court, and that tribunal, finding that the amount in dispute was not large enough to give it jurisdiction, ordered the case transferred to this court. The petition and answer in the case were quite lengthy, and we have contented ourselves with giving such an outline of the matters pleaded as was deemed sufficient to give a proper understanding of the really pertinent issues. A motion to dismiss the appeal was filed in the Supreme Court, but, as we have not found it in the record, and it is desirable to settle the case on its merits, we shall overrule the motion.

## "Opinion.

"The village of Dodson is a municipal corporation, and its affairs were administered by a mayor and board of aldermen in accordance with the provisions of Act No. 136, p. 224, of 1898 (commonly known as the 'Lawrason act'), which, so far as it applies to a municipality of that class, may be said to be the charter of Dodson.

"Section 19 of the act is as follows: 'That the officers of every municipality shall be a mayor, aldermen, a marshal, a tax collector, a clerk and a street commissioner. The mayor, aldermen and marshal shall be elected by the people, the officers, by the board of aldermen.'

"It further provides (section 15) that the mayor and board of aldermen of every city, town, and village shall have power to prescribe the duties and to fix the compensation of all officers and employés and to require bonds with sureties for the performance of duties of all officers and employés. Thus we see that the office of marshal is created by the Legislature, and is filled by election; and hence the mayor and aldermen are powerless to abolish the office, and they cannot legally remove the incumbent save by proceedings for that purpose conducted in accordance with rules which they are required to adopt. But can they fix an excessive bond and wholly inadequate compensation, force the marshal to resign, and thus accomplish by evasion what would be illegal for them to do directly?

"We hardly think that counsel for defendants are really in earnest in their effort to show that the salary of the marshal, as fixed by the majority of the board of aldermen, is a reasonable one, or that said majority acted in good faith in the premises.

"Their main, if not their only real hope, is upon the proposition, so earnestly pressed in their elaborate and able brief, that the language used by the Lawrason act, in conferring upon the mayor and aldermen the power to fix the bond and compensation of the several officers named, is permissive and not mandatory, and gives the board the right to perform the duty or leave it undone as its wisdom dictates; in other words, that the duties referred to are entirely within the discretion of the board, and this being so, the court will not interfere with the board, or even attempt to review the manner in which it has been performed. The vital question in the case is whether, without regard to the words or language in which the power is granted, the Legislature has required these boards to fix the compensation and bonds of marshals, or has simply authorized them to do so, or not, as they see fit.

"If it is their absolute duty to do these things, then it is their duty to do them in a reasonable way—that is, they are required to fix a reasonable compensation and bond—and the writ herein sued out may be invoked to compel a compliance with that duty.

"Considering the nature of the office of city marshal and the fact that a proper performance of its duties would require all the time of the officer, we think we are justified in assuming that the Legislature intended to create it a salaried office and to require the board to fix a reasonable compensation and bond.

"The language employed by the Legislature in conferring the power under consideration is of but slight importance in determining the question whether the duty is mandatory or discretionary.

"Substantially the same language was used in conferring upon police juries and municipalities the power to assess licenses for retail

of intoxicating liquors, and yet the Supreme Court in several recent cases held that such bodies could be compelled to fix the licenses within certain bounds.

"See State ex rel. Lisso v. Police Jury, 116 La. 767, 41 South. 85; State ex rel. Davis v. Police Jury, 120 La. 163, 45 South. 47, 14 L. R. A. (N. S.) 794, 124 Am. St. Rep. 430; Walls v. Police Jury, 11 La. Ann. 141.

"Statutes imposing a duty upon a municipal corporation, and at the same time giving the means of performing such duty, will, as a rule, be regarded as mandatory, though the statute conferring the power be permissive in its terms. Am. & Eng. Ency. of Law, vol. 20, p. 1141; Dillon on Municipal Corporations, vol. 1, pp. 151, 152.

"Having concluded that the duty to fix the compensation and bond of the relator in this case was mandatory imposed upon the mayor and board of aldermen of the village of Dodson, the power of the courts to determine whether that duty has been performed in a legal and reasonable way is, we think, firmly established by the jurisprudence of this and other states, and by the text-writers. The doctrine is uniformly supported that the question whether an ordinance is reasonable is one of law for the court. McQuillin's Municipal Ordinances, p. 297; 28 Cyc. p. 377; 26 Cyc. p. 161; Smith's Modern Law of Municipal Corporations, vol. 1, pp. 525, 527; Am. & Eng. Ency. of Law, vol. 21, p. 985.

"The evidence shows that Dodson is a railroad and mill town of about 1,000 inhabitants; that a large portion of its inhabitants is made up of negro sawmill hands, who, when filled with blind tiger liquor and in possession of the ever-ready Colt's 40 some odd, are liable to make life interesting, if not precarious, in that community.

"It is further shown that the predecessor of the relator had been paid all the way from $50 to $85 a month, and a number of the citizens of the village testified that from $50 to $65 a month would be a reasonable salary.

"Under these conditions an ordinance which fixes the salary at $1 a month, and under which the relator has no chance to realize more than $75 or $80 a year, is held to be unreasonable and arbitrary, and hence null and void, and the defendants will be required to provide a reasonable compensation and to fix a reasonable bond.

"We think the district judge was right in holding that the relator is entitled to his salary from the time he was prevented by the defendants from entering upon the discharge of his duties. The judgment appealed from is affirmed, at the cost of the appellant, and this opinion is handed down at Shreveport, instead of Alexandria, to which place it was regularly sent in accordance with the agreement of parties in the record."

The plaintiff and appellee has moved to dismiss the review on the following grounds:

"(1) Because there was no ordinance or resolution passed by the mayor and board of aldermen authorizing this appeal.

"(2) Because the mayor was present and refused to sign the appeal bond at the time the mayor pro tempore signed the appeal bond; that mayor pro tempore can only act in absence, disability, or recusation of mayor, as provided by Act No. 136, p. 224, of 1898.

"Relator shows that he filed a motion in the Court of Appeal which contained all the elements of this motion, but that it has been lost or destroyed. He shows that he filed a similar motion when this case was on appeal before your honorable court, which bore the number 16,956; but that when the case was remanded to Court of Appeal he made a similar motion.

"In view of the premises relator prays that this motion be filed, and that defendants' appeal be dismissed. He prays for all necessary orders and for general relief."

### Motion to Dismiss.

The defendant corporation did not go into court through its own volition. It was taken there as a defendant by force of plaintiff's own right to proceed against it. The defendant itself appeared in its own name through attorneys whose authority is not questioned. The answer reads, "into court comes the defendants."

It requires no authorization from itself to itself, to make an appearance. Having been cast in the action, it had capacity of itself and independently of any authorization to appeal. When subsequently on appeal the judgment appealed from was affirmed, it had a continuing right to relief through an application to the Supreme Court for a certiorari or writ of review. This court in the exercise of the discretion conferred upon it by article 101 of the Constitution, considering it a proper case for review, ordered it, and it is now (under our orders) before us for that purpose.

The application to dismiss the proceedings is refused.

The defendant urges: That the judiciary has no power or control over the legislative department of the state in any matter intrusted by the organic law to its discretion.

Articles 16 and 17, Const. 1898. That municipal corporations are agencies and subdivisions of the state, to whom certain powers of the government may be delegated and intrusted by the General Assembly. The mayor and board of aldermen of the village of Dodson represent the legislative department. See Words and Phrases, vol. 5, p. 4621.

That that rule applies to municipal corporations to whom the General Assembly has expressly granted unlimited power and authority to deal with respect to certain matters. Their action upon the matters so delegated to them stands upon the same footing as if done by the Legislature itself so far as the judiciary is concerned. Schmidt v. City of Indianapolis, 168 Ind. 631, 80 N. E. 632, 14 L. R. A. (N. S.) 791, 120 Am. St. Rep. 385; 26 A. & Eng. Ency. 569.

That a municipal corporation may, through its legislative department or board of aldermen, fix, change, or abolish the fees or salary of any municipal officer, where there is no law specially forbidding it, and the only remedy for dissatisfaction with the salary is a resignation. 1 Smith's Modern Law of Municipal Corporations, § 685, pp. 1628, 1629; 1 Dillon's Municipal Corporations, §§ 229 (168), 230 (169), 231 (170).

That the Legislature of the state has fixed no salary for the marshal of villages, but, on the contrary, has specially intrusted the mayor and board of aldermen with the management of the finances of the villages, and authority "to fix the compensation and bonds of all officers and employés." Acts of 1898, p. 230, § 15, par. 15.

That the authority conferred on municipal boards to fix the compensation of its officers is permissive merely and not mandatory. The salary of a municipal officer is not a contract with the corporation, and can be changed at the will of the governing board.

The fifteenth section of Act No. 136, p. 228, of 1898, reads:

"That the mayor and board of aldermen of every city, town and village shall have the care, management and control of the city, town or village and its property and finances, and shall have the power to enact ordinances for the purpose hereinafter named, and such as are not repugnant to the laws of the state and such ordinances to alter, modify and repeal, and they have power * * *

"Par. 15. To provide for the election of such municipal offices other than those required by this act as may be found necessary to prescribe the duties and to fix the compensation of all officers and employés and to require bonds with sureties for the performance of duties from all officers and employés."

The nineteenth section reads:

"That the officer of every municipality shall be a mayor, alderman, a marshal, a tax collector and a street commissioner. The number of aldermen in a city shall not be less than five nor more than nine, and in a town, five; and in a village, three. The marshal may be the street commissioner; and in towns and villages he shall be the tax collector and may be in a city. The mayor or the aldermen, and the marshal shall be elected by the people; the other officers by the mayor and board of aldermen. When there are eight or more aldermen, two shall be elected by each ward in a city, and the remainder at large; and in all other cases an equal number of aldermen shall be elected in each ward of a city, the remainder at large. If a town be divided into wards, one alderman shall be elected in each and one at large. The mayor and marshal in all municipalities shall be elected at large. The street commissioner and clerk may be an alderman, and the clerk or marshal may be a tax collector or assessor, if the mayor and board of aldermen so elect."

It is contended by defendant: That the delegation given to the mayor and aldermen of cities, towns, and villages by this statute with respect to the matters referred to in the fifteenth paragraph of the fifteenth section is as broad and general as can well be; that there is no restriction or limitation upon them; that they not only have full and complete control and discretion over those matters at the beginning, but they also have the right after having acted upon them to alter, modify, or repeal them.

That no one has a legal right to complain of the action of a mayor and board of alder-

men under unlimited powers delegated to them as to certain subjects unless through such action some provision of the Constitution of the state and some individual right fixed and guaranteed by that instrument has been invaded, or unless the action taken is open to attack for want of some formality required by law to have been followed.

That the wisdom or policy of such action, or the justice of the same may be discussed and disputed by individual citizens; but, when such action is submitted to the test of judicial examination and decision, it is bound to be upheld as to substance, even though the judges themselves announcing that fact might deem the action of those bodies calling for censure.

That even though their action may have been based visibly upon spite, dislike, political considerations, and unworthy motives, it would forcedly have to be maintained if it was within their legally delegated powers and legal as to the methods by which adopted.

It is urged that this legal proposition cannot be successfully controverted. First Municipality v. Pease, 2 La. Ann. 538; Villavaso v. Barthet, 39 La. Ann. 258, 1 South. 599; Dillon on Corporations (3d Ed.) p. 326; Watson v. Turnbull, 34 La. Ann. 856; Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148; McCardle, Ex parte, 7 Wall. 514, 19 L. Ed. 264; Brown v. City of Cape Girardeau, 90 Mo. 377, 59 Am. Rep. 28; Jones v. Jones, 12 Pa. 350, 51 Am. Dec. 611, note on page 623; Schmidt v. City of Indianapolis, 168 Ind. 631, 80 N. E. 632, 14 L. R. A. (N. S.) 791, 120 Am. St. Rep. 385; 26 A. & E. Ency. 569; United States v. City of New Orleans (C. C.) 31 Fed. 537; Lane v. Anderson (C. C.) 67 Fed. 563; Enterprise Sav. Ass'n v. Zumstein, 67 Fed. 1000, 15 C. C. A. 153; Abbott on Municipal Corporations, vol. 3, § 2473; New Orleans Waterworks Co.

v. City of New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; Moore v. City of New Orleans, 32 La. Ann. 749; State v. Common Council of the City of New Orleans, 52 La. Ann. 1263, 27 South. 572; State ex rel. Belden v. Fagan, 22 La. Ann. 548.

We understand the Court of Appeal to maintain that the arguments of counsel do not apply to this particular case for the reason that under section 19 of Act No. 136, p. 235, of 1898, the mayor, the aldermen and the marshal are not elected or appointed by the mayor and board of aldermen, and are without power by any action of theirs to practically abolish the office of marshal, which is one of the offices elected by the people.

The Court of Appeal says:

"Considering the nature of the office of city marshal, and the fact that a proper performance of the duty would require all the time of the officer, we think we are justified in assuming that the Legislature intended to create it a salaried office and to require the board to fix a reasonable compensation and bond. If it is their (the board's) absolute duty to do these things, then it is their duty to do them in a reasonable way—that is, they are required to fix a reasonable compensation and bond—and the writ herein applied for may be invoked to compel a compliance with that duty. Watts et al. v. Police Jury, 11 La. Ann. 141; State ex rel. Lisso v. Police Jury, 116 La. 767, 41 South. 85; State ex rel. Davis v. Police Jury, 120 La. 163, 45 South. 47, 14 L. R. A. (N. S.) 794, 124 Am. St. Rep. 430."

Plaintiff contends: That one who fills the position of marshal in a town which contains a mixed population of 1,000 people, and which contains 1½ square miles of territory, is entitled to a reasonable sum for his services.

That a city office created by the Legislature cannot be abolished by a town council, and, where a person has been commissioned and has qualified as marshal, an ordinance which abolishes his salary is in direct conflict with the federal Constitution, as it impairs the obligation of a contract. 28 Cyc. p. 401, § 3;

Marquis v. City of Santa Ana, 103 Cal. 661, 37 Pac. 650; 21 Am. & Eng. E. p. 981.

That statutes imposing a duty upon a municipal corporation, and at the same time giving them the means of performing such duty, will as a rule be regarded as mandatory, though the statute conferring the power be permissive in its terms. The right given the mayor and board of aldermen, under paragraph 15 of section 15 of Act No. 136, p. 230, of 1898, "to fix the compensation and bond of all officers and employés," does not give the council the power to abolish an office created by the Legislature. 20 Am. & Eng. E. p. 1141, § 7; 1 Dillon on Mun. Corporations, pp. 151, 152.

In defendants' brief, counsel make the following statement of facts from its standpoint:

"The village of Dodson contains about 1,000 inhabitants. Its revenues during the year 1906 from all sources (including fines, $410) aggregated $1,711.73, of which amount $1,464 was paid out in salaries of the officers, leaving only $274.73 for the improvements of the streets and the payment of all the other municipal expenses. Of the amount paid out in salaries, the mayor (T. G. Payne) received $240, and the marshal (R. R. Gentry) received $1,000, making $1,240, much more than half the total amount collected. See Doc. D. A. P. 120, trans. Among the voters there seems to have been some dissatisfaction growing out of this condition of affairs as the campaign in 1907 was conducted upon a platform of a more economic administration of public affairs, and the party advocating this economy elected their ticket, at least the aldermen and marshal.

"After the installation of this new board of aldermen, true to their platform, they materially reduced the salaries of the village officers. The salaries of the aldermen were abolished altogether, each alderman agreeing to serve without pay. The salary of the mayor was reduced from $240 to $70; that of the clerk from $40 to $25; that of the treasurer was abolished entirely; that of the attorney reduced from $100 to $35; and the salary of marshal was reduced from a guaranteed salary of $65 per month (in reality above $1,000) to a salary of $15 per month. See Statement D. C. 122, trans.; Test. Boonep. 42, trans. This they supposed would leave them about $600 for the improvements of the streets, instead of the small amount (say about $274.75) formerly left for both streets and other miscellaneous expenses outside of salaries. See Statement, D. C. p. 122.

"Mr. Campbell, the newly elected marshal,

after the salary of the office had been reduced to $15 per month, and after serving several weeks under this salary, became dissatisfied, and, pursuing the only course open to him, resigned.

"The Governor, on the 17th day of October, 1907, appointed the plaintiff, R. R. Gentry, marshal to fill the place made vacant by the resignation of Campbell, the salary to which office had been previously fixed at $15 per month; but in the meantime, and before Gentry took the oath and gave bond as marshal, that office had been divorced from the offices of street commissioner, tax collector, and tax assessor, and the salary fixed at $1 per month, $1 for each arrest, and 10 per cent. of all fines collected.

"Dillon, in his excellent work on Municipal Corporations, a standard authority in our state ([4th Ed.] vol. 1, § 230, p. 311), says:

"There is no such implied obligation on the part of municipal corporations, and no such relation between them and officers which they are required by law to elect, as will oblige them to make compensation to such officers, unless the right to it is expressly given by law, ordinance, or by contract. Officers of a municipal corporation are deemed to have accepted their office with knowledge of, and with reference to, the provisions of the charter or incorporating statute relating to the services which they may be called upon to render and the compensation provided therefor. Aside from these, or some proper by-law, there is no implied assumption on the part of the corporation with respect to the services of its officers. In the absence of express contract, these determine and regulate the right of recovery, and the amount."

"And again (section 231, p. 313) the same author says:

"A municipal corporation may, unless restrained by charter, abolish an office created by ordinance; and may also, unless the employment is in the nature of a contract, reduce or otherwise regulate the salaries and fees of its officers, according to its view of expediency and right. Although an officer may be elected or appointed for a fixed period, yet, where he is not bound, and cannot be compelled to serve for the whole time, such election or appointment cannot be considered a contract of hire for a stipulated term. Ordinances fixing salaries are not in the nature of contracts with officers."

"In Abbott on Corporations, another textwriter of national reputation (volume 2, p. 1628, § 685), it is said:

"The relation which exists between a public official and the corporation is one created by law and not partaking in the least of the nature of a contract. A public official is regarded in respect to the performance of his public and official duties as a trustee for the corporation which he represents and for its interests, whatever may be their character. The duties of a public official are those attached by law to a particular office. They are fixed and prescribed by law, and the question of compensation is dependent upon the terms of the law which cre-

ates the office and prescribes its duties. If there is no compensation provided, the services must be performed gratuitously. If one is not willing to enter upon or continue in public office and discharge its duties for the compensation as fixed by statutes regulating the amount, he is at perfect liberty to decline the office or tender his resignation. The performance of a service attached to a public office carries with it no contract right of compensation. The claims of a public official of this character are dependent upon the terms of a particular law."

"And in Smith's Modern Law of Municipal Corporations, vol. 1, p. 183, the author says:

"The state Legislature, except as restrained by the Constitution, has the power to increase, diminish, or cut off entirely the salary of an official. Likewise, the Legislature may increase the duties without enhancing the compensation, or may diminish the compensation without lessening the duties."

"And again, on page 171, in section 173, the same author says:

"It is a general rule of law that a corporation is liable to its officers for their salaries when the work has actually been done, but it is highly necessary that great care should be exercised in appointing or electing the officers to their positions, as the least omission or technicality may be fatal to their appointment or election, in which event they have no right to compensation. The salary of an official may be reduced during his term of office. But an officer cannot be compelled to take less compensation for his services than that fixed by statute." Bosworth v. City of New Orleans, 26 La. Ann. 494.

### Opinion.

We have carefully examined the record for the purpose of ascertaining what legal rights the plaintiff has in the premises, and, if any, in what manner and to what extent these rights may have been violated or not recognized, and what power and authority the courts of the state have in respect to the same. We find: That the actions of which the plaintiff complains were taken under the express powers and authority delegated to them without limitation or restriction by the General Assembly of Louisiana in the fifteenth section, and in the nineteenth section of Act No. 136, pp. 228, 235, of 1898; that the General Assembly was authorized under the Constitution to make such delegation of power and authority to them; that the defendant have acted within the power and authority so delegated. We do not find that any constitutional or legal right of the plaintiffs has been violated. Under the circumstances disclosed by the record, the courts of the state are without constitutional power or authority to interfere in the matter and to substitute their judgment and discretion in lieu of the judgment and discretion of the body to which it has been constitutionally and legally confided.

The Court of Appeal erred in the judgment brought up for review in affirming the judgment of the district court taken to it by the defendants on appeal, and the district court erred in rendering the judgment so appealed from.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the Court of Appeal herein brought before us for review be, and it is hereby, annulled, avoided, and reversed, and it is further ordered, adjudged, and decreed that the judgment of the district court, affirmed by the Court of Appeal in said judgment on appeal, be also annulled, avoided, and reversed.

It is further ordered, adjudged, and decreed that plaintiff's demand be, and it is hereby, rejected, and his suit dismissed, at his costs in all courts.