(55 South. 587.)

No. 18,260.

PARKER et al. v. MAYOR AND CITY COUNCIL OF MONROE et al.

(April 24, 1911. Rehearing Denied June 17, 1911.)

*(Syllabus by the Court.)*

1. DRAINAGE (§ 15*) — ESTABLISHMENT OF DRAINAGE DISTRICT—RIGHTS OF MUNICIPAL CORPORATION.

The city of Monroe, being exempt by its charter from the jurisdiction of the police jury of the parish, is within its rights in declining to be included in a drainage district attempted to be created by that body.

[Ed. Note.—For other cases, see Drainage, Cent. Dig. § 7; Dec. Dig. § 15.*]

2. MUNICIPAL CORPORATIONS (§ 323*)—PUBLIC IMPROVEMENTS—LEVEE AND DRAINAGE SYSTEM.

The city of Monroe being vested by direct and specific grant from the General Assembly with the power to provide for itself a levee and drainage system, that power cannot be exercised by citizens, who may entertain views upon the subject, or by expert witnesses, whose opinions may be obtained, or by the courts after hearing such citizens and witnesses. The grant carries with it the power to determine what system shall be provided; and the exercise of that discretion cannot be judicially interfered with or questioned, except where the power is exceeded, or fraud is imputed and shown, or there is a manifest invasion of private rights, or gross abuse.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 842–846; Dec. Dig. § 323.*]

3. MUNICIPAL CORPORATIONS (§ 278*)—DRAINS—ESTABLISHMENT—"EMERGENCY."

Where an idea of establishing a drainage system has been in process of incubation for a number of years, and there is no unforeseen occurrence or combination of circumstances which operate to change the situation, it cannot be said that the putting of the idea into execution at a particular time was demanded by an "emergency."

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 278.*]

4. INJUNCTION (§ 12*)—SUBJECTS OF RELIEF—INJUNCTION INEFFECTUAL.

While the charter requirement of a municipal corporation that work and material shall be let to, and bought from, the lowest bidder, is to be enforced as written, it cannot well be enforced, by injunction, as to work already done or material already bought, nor yet as to work to be done or material to be bought, when the evidence shows that it was, and is, the intention to conform to said requirement.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 12.*]

*(Additional Syllabus by Editorial Staff.)*

5. WORDS AND PHRASES—"EMERGENCY."

"Emergency" is an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p. 2361.]

Appeal from Sixth Judicial District Court, Parish of Ouachita; J. P. Madison, Judge.

Action by John P. Parker and others against the Mayor and City Council of Monroe and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Lamkin & Millsaps and A. A. Gunby, for appellants. Stubbs, Russell & Theus and Hudson, Potts & Bernstein, for appellees.

Statement of the Case.

MONROE, J. Plaintiffs, four citizens and taxpayers of the city of Monroe, obtained an injunction prohibiting the city authorities "—from proceeding with the opening of a canal, or excavation, along Calypso street, and constructing along said street a concrete box for drainage, or doing any work whatever under the resolution or ordinance adopted by the city council of Monroe on July 19, 1909, authorizing the mayor, drainage committee, and city

engineer to proceed, as soon as possible, with the construction of the drainage system, according to the plans submitted by the city engineer and adopted by said council at its meeting, July 19, 1909."

The allegations upon the basis of which the injunction was obtained are, in effect, that the natural and practicable way to drain the city is through the west fork of Young's bayou, which lies to the eastward, and that the plan which the authorities have adopted (of draining into the Ouachita river, which borders the city upon the westward) is unscientific, impracticable, unreasonable, illegal, wrongful, unauthorized, null, and void; that there is an identity of interest as to the drainage between the city and the territory of the parish lying to the north, east, and southeast; that the law contemplates co-operation in such cases between the city and parish authorities, and that the police jury created a drainage district, including the city, but that the city authorities declined to be included, and authorized the mayor and drainage committee and city engineer to proceed, as soon as practicable, with the construction of a drainage system according to the plans submitted by the city engineer and adopted by said authorities; that no appropriation was made to cover the expense, and that the attempt to incur an indebtedness therefor is illegal; that the authorization to the officers mentioned to do the work and purchase material at the expense of the city is in contravention of the charter (section 31, Act No. 47 of 1900), which provides that all public works and all purchases of materials and supplies ordered by the city shall be let at public auction to the lowest bidder who can furnish the same satisfactorily; that the digging of said canal through Calypso street is an unlawful use of the street, which was dedicated as a highway for the use of people and vehicles, and will reduce the value of property thereon; that the throwing up of quantities of dirt in the summer will be inconvenient and unwholsome; that the putting in of the proposed concrete box drain will cause sloughing and caving, and threaten the destruction of the street and of peitioners' property, etc. The injunction, which was issued, after hearing on a rule nisi, was dissolved after the case had been heard on the merits, and the plaintiffs are prosecuting the appeal.

The facts, as disclosed by the record (so far as we find it necessary to recapitulate them), are: That the city of Monroe lies between the Ouachita river, which constitutes its western boundary, and the west fork of Young's bayou, which flows in a general southeasterly direction, partly within the limits of the eastern boundary; that there is a fall of about 13 feet from the river to the bayou, and that the natural drainage is in the direction of the bayou; that the bayou is a sluggish stream, and, though the city, in past years, has spent $25,000 in the effort to make it available, does not furnish an adequate outlet for prompt drainage; that the present mayor has been in office since 1898, and, having the question of the drainage of the city constantly in his mind, has availed himself of his opportunities for studying the subject; that the city engineer, who has been in office since 1906, and had considerable experience in his profession prior to that time, has also given the matter his careful attention, and that the two officers, both of whom are thoroughly familiar with the topography and meteorological phenomena of the city, after consulting at various times with the members of the city council, recommended a plan for drainage, one of the units of which is the construction of a reinf rced concrete conduit, which is to extend from the bayou to the river, and serve eventually both as a drain and sewer, the other units of the plan to consist of similar conduits (to be constructed in the future), sewer connections, etc., and that the plan so recommended was adopted by the city council, which body declined to recognize the

inclusion of the city in a drainage district attempted to be created by the police jury, and instructed the mayor, the drainage committee and the city engineer to proceed with the execution of the plan so adopted; that the drainage district proposed by the police jury includes, say, 40,000 acres of land, of which probably nine-tenths lies outside of the city of Monroe, and of which, also, plaintiffs (with, perhaps, one exception) own a considerable portion, in addition to their holdings within the city limits; that the action referred to was taken by the council on July 19, 1909, at a time when the water in the river was very low and falling, and that, as the outlet of the contemplated conduit was to enter the river at a point some 23 feet below the surface of the ground, and be provided with an iron gate or valve, it was considered highly important that it should be constructed without delay, as its construction in high water would have been impossible, and the rising of the water whilst the work was going on would have been disastrous; that, under the circumstances, the particular work referred to was regarded as in the nature of emergency work, which it was competent and proper that the officers mentioned should have done at once and without advertising for bids or letting out contracts; that it was the intention to advertise for bids for the rest of the work and material required, though the details of the plan had not been sufficiently worked out by the city engineer to furnish a basis for an advertisement at the time that the injunction issued; that there had been a budget appropriation for drainage purposes for the year 1909 of $7,500, and another of $18,750 for improvements in the fire department, and that, the negotiations looking to such improvements having been fruitless, it was contemplated that such amount should be transferred to the drainage fund.

Plaintiffs introduced a civil engineer as an expert witness, and he gave his opinion in regard to the advantage of drainage into the bayou as compared with the plan proposed: he, however, labored under some disadvantage, in that he was not accurately informed in regard either to scope or the details of the plan, and was not familiar with the country or conditions in and under which it is to be executed. Much of his testimony is therefore rather wide of the mark. Defendants called two civil engineers, the city engineer of Monroe and the city engineer of Beaumont, Tex., and they differed in opinion with the engineer called by plaintiffs; and, so far as we can judge, had rather the better of the argument. At all events, plaintiffs have entirely failed to show that the plan of which they complain is either unscientific, impracticable, or unreasonable.

### Opinion.

[1] The charter of the city of Monroe exempts it from the jurisdiction of the police jury of the parish, and confers upon it the power "to provide a levee and drainage system" (Act No. 47 of 1900, § 9, subd. 19); and Act No. 159 of 1902 (amending and re-enacting Act No. 12 of 1900) § 10, provides that:

"Whenever, by its charter, any municipal corporation is exempt from the jurisdiction of the police jury of the parish * * * and the police jury * * * shall create a drainage district, including therein a portion of the territory of the parish and a portion, or the whole, of the territory of such municipal corporation, there being an identity of interest between the territory of the parish and the territory of the municipality so included in the drainage district, as defined above, for the cleaning and opening of natural drains, for constructing new drains and canals or for carrying (on) new works of whatever nature they may be, *upon concurrence of said municipal corporation in the creation of said drainage district*, either through the action of the council of said municipal corporation, or in such manner as may be provided for by the charter of said municipal corporation, then, the district so created by said police jury and concurred in by said municipal corporation shall be a drainage district under this act."

It is clear from the foregoing that it is left to the municipal corporation, which is exempt from the jurisdiction of the police

jury, to determine whether it will co-operate with that body in the creation of a drainage district, and that the city of Monroe, being so exempt, was entirely within its rights in declining to be included in the drainage district which the police jury of the parish of Ouachita attempted to create.

[2] It is clear, also, that the city of Monroe is vested, by direct and specific grant from the General Assembly, with the power to provide for itself a levee and drainage system, from which, it follows that the power to provide a levee and drainage system for the city of Monroe cannot be exercised by any three or four of its citizens, who may happen to entertain views upon the subject, or by any expert witnesses, whose opinions may be obtained, or by the courts after they have heard the citizens and the witnesses.

The grant of power to provide for a drainage system carries with it the power to determine what system shall be provided, and the exercise of that discretion cannot be judicially interfered with or questioned, except where the power is exceeded, or fraud is imputed and shown, or there is a manifest invasion of private rights, or gross abuse. Dillon on Municipal Corporations, pp. 151, 152, § 94. See, also, 20 A. & E. Enc. of Law (2d Ed.) pp. 1229, 1230, and notes; Const. arts. 16, 17; C. C. art. 429, Act No. 47 of 1900, §§ 9, 19; Brennan v. Sewerage & Water Board, 108 La. 582, 32 South. 563; City of New Orleans v. Steinhardt, 52 La. Ann. 1048, 27 South. 586; State ex rel. Gentry v. Mayor et al., 123 La. 903, 49 South. 635; Mayor, etc., v. Eldridge, 64 Ga. 524, 37 Am. Rep. 91; Horton v. Mayor, etc., 4 Lea (Tenn.) 39, 40 Am. Rep. 3; Hildreth v. Longmont, 47 Colo. 79, 105 Pac. 107; Johnston v. District of Columbia, 118 U. S. 20–22, 6 Sup. Ct. 923, 30 L. Ed. 75; Wilson v. Mayor of New York et al., 1 Denio (N. Y.) 595, 43 Am. Dec. 719–723, and notes; 22 Cyc. 879, 882, 884, 892; Valparaiso v. Hagen, 153 Ind. 337, 54 N. E. 1062, 48 L. R. A. 707, 74 Am. St. Rep. 305.

In the case of New Orleans & N. W. R. Co. v. Town of Vidalia, 117 La. 561, 42 South. 139, this court was called on to determine whether it could pass upon the reasonableness of a municipal ordinance, in the exercise of the power conferred by certain sections of Act No. 136 of 1898, which in terms grant an appeal to the courts from the action of municipal corporations in the particular cases specified; and the language of the opinion which has been quoted by the learned counsel for the plaintiffs must be considered with reference to the question which was decided, and which was quite different from that here presented.

In State ex rel. Thurmond v. City of Shreveport, 124 La. 178, 50 South. 3, 134 Am. St. Rep. 496 (also referred to by plaintiffs), it was held that:

"The courts may interpose where a city council, having no power to abolish an office created by the charter, or to remove an officer, except for cause, manifestly attempts to abuse its discretion to fix the salary of the officer, fixing it so low that no competent person will accept the office."

Which is also a very different case from that here presented.

By section 30 of its charter, the city of Monroe is prohibited from appropriating funds in excess of the estimated revenues of the year; but we do not find that any such appropriation is here shown to have been made. Section 31 reads in part:

"That all contracts for public works, or for material or supplies ordered by the council, shall be offered by the mayor at public auction and be given to the lowest bidder who can furnish same satisfactorily to the council; or the same, at the discretion of the council, may be advertised for proposals, to be delivered to the mayor in writing, and sealed, and the contract shall be awarded to the lowest bidder who can furnish security satisfactory to the council; provided, that the council shall in either case, have the right to reject any and all bids."

[3, 5] We are not very much impressed with the idea that the particular work upon which defendants were engaged when the in-

junction issued should be held to have been authorized because demanded by an emergency, as an emergency is "an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency" (Webster's New Int. Dict.); whereas the idea of the work in question was in process of incubation for several years, and there was no unforeseen occurrence, combination of circumstances, necessity, or exigency, which called for immediate action upon it in July, 1909. [4] We gather from the record, however, that the city of Monroe handles some of its own public utilities, such as electric power and lighting and street car service; that it owns gravel beds, and operates teams for the hauling of the gravel, and other purposes, and incidentally does a good deal of its own work, and was doing the work in question when the injunction was issued. Whilst, therefore, we are of opinion that the law which we have quoted is to be enforced as written, we do not very well see how it can be enforced in this case as to material that had already been purchased or work that had been done, or so near done, that its completion was necessary as a matter of safety, or how it can be enforced as to the further execution of the drainage plan, since the testimony shows that it was, and is, the intention to conform to said law by advertising the rest of the work, or buying the material in the manner required by it.

Upon the whole, finding no error in the judgment appealed from, we are of opinion that it should be affirmed, and it is so ordered and decreed.

SOMMERVILLE, J., takes no part herein.