RAMOS ET AL., PETITIONERS AND APPELLEES, *v.* BAKERS' UNION OF GUAYAMA, ETC., DEFENDANT AND APPELLANT.

APPEAL from the District Court of Guayama in Injunction Proceedings.

No. 2982.—Decided July 24, 1923.

INJUNCTION—PROTECTIVE ASSOCIATION—TRUST FUND—EMERGENCY.—When an association organized for the benefit and protection of its members and authorized by its by-laws to employ, a majority of its members agreeing, the balance of the common fund in cases of emergency, invests a part of the said trust fund in order to organize a new partnership for the purpose of saving an existing critical situation, such action is within the scope of its authority; therefore, an injunction does not lie to restrain the use of such funds in that manner.

The facts are stated in the opinion.

*Mr. J. Soto Rivera* for the appellant.

*Mr. M. A. Martínez Dávila* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

At the time of the events which gave rise to the present controversy three bakeries were in operation in the town of Guayama. Two or three others had remained idle for several years. Of the three active bakeries one operated by J. Mir & Co. was using two to three sacks of flour a day. Bread was being sent into Guayama from Arroyo by a baker named Padilla.

One or both of the two larger bakeries informed the officers of the local union that wages must be reduced in order to meet this competition. The representatives of the union replied that they would abide by the terms of a written agreement to which these two bakeries and the local union were parties. They also offered to call Padilla and Mir into a joint conference in confident expectation of being able to adjust matters without a reduction in wages. At the same time they expressed a willingness to stand by any bakery that was really in distress and indicated a disposition, in the event of arriving at no satisfactory solution through the proposed joint conference or other means and upon a

proper showing that the Guayama bakeries were actually losing money, to work, if necessary, for "a bit of bread and codfish," but they demanded some showing as to the alleged loss in operation.

Thereupon, first one and then the other of the two larger bakeries were closed. One of them opened a few days later with the aid of operatives imported from another town. Shortly thereafter the other resumed operations. Delinquent and disloyal members of the union found employment in both, and, either before or after appearing as plaintiffs herein, were suspended, expelled, or dropped from the rolls.

J. Mir & Co. continued to employ members of the union for a time, but finally announced that they could no longer stand the strain.

Then the union, whose members (with the exception of those who had deserted and the few employed by Mir & Co.) were idle, came to the rescue with a portion of an emergency fund and formed a partnership with J. Mir & Co. for a period of one year, each of the parties contributing an equal amount. The new partnership so formed continued to operate the Mir bakery under a lease from the owner thereof up to the time the present proceeding was instituted, some two months later. The business showed a loss of $50 the first month, said to be due in part to opposition and obstruction on the part of plaintiffs herein and in part to an experiment with day and night shifts which was not a success. But this error of management was corrected and the second month showed a substantial profit over and above expenses, notwithstanding the employment given to all members in good standing of the local union.

This union was organized for the benefit and protection of its members and a trust fund or emergency fund was provided for with a view, among other things, to the establishment of a coöperative bakery.

The testimony of plaintiffs themselves shows this, but

they insist that the partnership arrangement with Mir & Co. was a bad business likely to result in the loss of the trust fund, or the portion thereof employed as a part of the working capital. The theory of counsel for petitioner is that the plan for a coöperative bakery did not contemplate or include a business partnership with persons not members of the organization, or the operation of a bakery not owned by the union under an agreement of lease with the owner.

But the by-laws expressly provide that this fund shall be used in such manner as the union by a majority vote shall determine. The district court, upon the theory that the situation above described did not constitute an emergency and therefore that the union was diverting a trust fund in which petitioners had an interest, issued an injunction restraining defendant from using any portion of such fund and commanding that the same be kept intact until such time as the *pro rata* share therein of each of petitioners shall have been refunded to him.

From the reasoning upon which this decision was based we quote the following:

"So far as pertinent said article V reads as follows: 1 . . . 2 . . . 3. Whatever surplus may be derived from funds for the Executive Council of the Independent Federation, individual quotas for the International and funds voted by the quorum, shall constitute an emergency fund. 4. The emergency fund shall be employed by the Union in the manner it may deem expedient as evidenced by a majority vote of its members. The funds of the Union shall also respond for any negligence in the labor operations that may adversely affect the interests of the employers subject to the proper investigation, and the chief baker or official in charge or any officials upon whom the responsibility may lie shall be personally liable and shall refund the amount of said damages. Admitting, as it has been admitted, that the $450 sought to be contributed to the partnership with the commercial firm of J. Mir & Co. for the establishment of a baking concern, form a part of the so-called emergency fund, the point to be decided is whether or not the fact that there was a lockout of the bakeries of

Guayama or that such a lockout was impending at the time that the execution of such contract was contemplated, constituted an emergency in the legal sense of the word. In this regard, the word 'emergency' has been defined by the authorities as follows: 'EMERGENCY'.—An 'emergency' is an event or occasional combination of circumstances calling for immediate action, pressing necessity, a sudden or unexpected happening, exigency. Colfax County v. Butler County, 120 N. W. 444 (Neb.); Parker v. City of Monroe, 55 So. 587–9; 128 La. 951.—The word 'emergency' is defined in Cen. Dict. as follows: (2) A sudden or unexpected happening; an unforeseen occurrence or condition; specifically, a perplexing contingency or complication of circumstances. (3) A sudden or unexpected occasion for action; exigency, pressing necessity. U. S. v. Sheridan Kirk Contract Co., 149 Fed. 809. 2 Words and Phrases (2nd Series) page 255.— We have discovered a case which, if not identical at least bears an analogy to the present one. It is State ex rel. Supreme Lodge Knights of Pythias v. Vandiver (Mo. 1908), 111 S. W. 911–17, where it was sought to construe the phrase 'reserve fund' and held that the same was synonymous with 'emergency' and that an Act authorizing a fraternal beneficial association created for beneficiary purposes to maintain, disburse and apply a reserve or emergency fund for the purposes of said association did not confer upon it power to issue nonforfeitable polices of insurance even though under its by-laws it might issue other kinds of policies. The theory is that an emergency or reserve fund is a trust fund for use when a real emergency occurs and cannot be used in lucrative and speculative undertakings. There is no doubt that it is an express trust. See 39 Cyc. 70–71; 39 Cyc. 90.''

That the fund in question is a trust fund may be conceded, but it was never created nor intended to be merely a deposit kept intact until returned to the individual members who had contributed thereto. There is nothing whatever in the record to indicate the existence at any time in the history of the union of any such idea of ultimate reimbursement.

The plan was, among other things, eventually, or, in case of need and as a means of protection and self-defense, to establish a coöperative bakery. With that end in view, a majority of the members were constituted the sole and ex-

clusive judges of the manner in which the fund should be used. The record furnishes no basis for the conclusion that the coöperative bakery in contemplation of the charter members, at the time of organization, should be acquired only by purchase or construction and owned exclusively by the union, or that the emergency fund was never to be used in operating such proposed bakery under lease from the owner thereof, either by the union alone or in partnership with some business associate not a member of the union.

It is not claimed, nor is there any evidence to show, that petitioners ever contributed anything whatsoever to such fund prior to the adoption of the by-laws including the article quoted by the trial judge, or any other basis than that established by the terms of the said article. There is, therefore, no room for the theory of any impairment of a contractual obligation through the adoption of the by-laws.

The analogy of the Missouri case referred to is not very apparent; and the syllabus does not indicate that a perusal of the opinion or an analysis of the formidable array of facts involved would be rewarded by any additional light on the subject.

We cannot agree with the court below that an emergency did not exist; and any doubt upon this point must be resolved in favor of defendant.

Bearing in mind the broad discretion conferred upon a majority of the members, a court of justice, unless confronted by a clear case of abuse rather than exercise of a power so unrestricted and so plainly bestowed, should decline to interfere.

The judgment appealed from must be

*Reversed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.