Ramos et al., Peticionarios y Apelados, *v.* La Unión Local de Panaderos de Guayama, Etc., Demandada y Apelante.

Apelación procedente de la Corte de Distrito de Guayama en un procedimiento de *injunction.*

No. 2982.—Resuelto en julio 24, 1923.

*Injunction*— Asociación— Fondo de Depósito— Emergencia— Atribuciones. — Cuando una asociación constituída para beneficio y protección de sus miembros y autorizada por sus estatutos para emplear, previo acuerdo de una mayoría de sus miembros, el sobrante del fondo en común en casos de emergencias, dispone de una cantidad perteneciente al expresado fondo de depósito para constituir una nueva sociedad a fin de resolver la situación crítica que existía, no puede concluirse que actuó fuera de sus atribuciones, y no procede por tanto el *injunction* para prohibirle usar o seguir usando tales fondos en la forma expresada.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. J. Soto Rivera.*

Abogado de los apelados: *Sr. M. A. Martínez Dávila.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

A la fecha de los sucesos que originaron la presente controversia estaban trabajando tres panaderías en el pueblo de Guayama. Dos o tres más habían dejado de trabajar por varios años. De las tres panaderías que elaboraban

pan una, administrada por J. Mir & Co., estaba usando dos o tres sacos de harina por día. El pan se enviaba de Arroyo a Guayama por un panadero llamado Padilla.

Una o ambas de las dos panaderías mayores notificó a los oficiales de la Unión Local que debían rebajarse los jornales para afrontar esta competencia. Los representantes de la Unión contestaron que se someterían a las condiciones estipuladas en un contrato por escrito en el cual eran partes estas dos panaderías y la Unión Local. También ofrecieron ellos citar a Padilla y a Mir a una conferencia conjunta en la seguridad de poder arreglar las cosas sin tener que hacer una rebaja de los jornales. Al mismo tiempo expresaron ellos su deseo de estar al lado de cualquier panadería que realmente se encontrara en mala situación y se mostraron dispuestos, caso de no poder llegarse a una solución satisfactoria por medio de la propuesta conferencia conjunta o de otro modo y de probarse debidamente que las panaderías de Guayama en realidad estaban perdiendo dinero, trabajar de ser necesario, "por un pedazo de pan y bacalao," pero ellos exigían que se acreditara de algún modo la alegada pérdida en el trabajo.

En tal virtud, primero una de las dos panaderías mayores y después la otra, fueron cerradas. Una de ellas abrió algunos días después con la cooperación de operarios traídos de otro pueblo. Poco después reanudaron las demas sus operaciones. Los miembros delincuentes y desleales de la Unión encontraron empleo en ambas, y bien antes o después de comparecer como demandantes en esta acción, fueron suspendidos, expulsados, o dados de baja.

J. Mir & Co. continuó empleando miembros de la Unión por algún tiempo, pero finalmente hizo saber que no podía soportar por más tiempo la tirantez que había.

La Unión entonces, cuyos miembros (con excepción de aquellos que se habían retirado y de los pocos empleados

por Mir & Co.) estaban sin trabajo, vinieron en auxilio con
una parte de un fondo de emergencia y formaron una socie-
dad con J. Mir & Co. por término de un año, contribuyendo
cada una de las partes con una suma igual. La nueva so-
ciedad así formada continuó funcionando la panadería de
Mir bajo un contrato de arrendamiento celebrado con su
dueño, hasta la fecha en que fué establecido este procedi-
miento unos dos meses después. El negocio indicaba una
pérdida de $50 el primer mes, lo que se decía era debido en
parte a la oposición y obstrucción de los aquí demandantes y
a un experimento puesto en práctica con las brigadas de día
y de noche, lo que no dió resultado. Pero este error de ad-
ministración fué corregido y el segundo mes se vió una ga-
nancia efectiva que sobrepasaba a los gastos, no obstante
el empleo que se dió a todos los miembros de buena repu-
tación de la Unión Local.

Esta Unión fué organizada para el beneficio y protec-
ción de sus miembros y se dispuso la creación de un fondo
común o emergencia entre otros fines con el de establecer
una panadería cooperativa.

La prueba de los mismos demandantes demuestra esto,
pero insisten en que el contrato de sociedad celebrado con
Mir & Co. era un mal negocio que podía traer por conse-
cuencia la pérdida del fondo común o de aquella porción
del mismo empleada como parte del capital en operación.
La teoría del abogado de los peticionarios es que el plan
para una panadería cooperativa no tuvo por objeto o com-
prendía un negocio en sociedad con personas que no fue-
ran miembros de la organización, o la explotación de una
panadería que no pertenecía a la Unión bajo un contrato
de arrendamiento con el dueño.

Pero los reglamentos disponen expresamente que este
fondo se empleará en aquella forma que la Unión pueda
determinar por una mayoría de votos. La corte de distrito,

basada en la teoría de que la situación arriba descrita no constituía una emergencia, y por tanto que la Unión estaba empleando mal un fondo común en el que tenían interés los peticionarios, libró una orden de *injunction* prohibiendo a la demandada usar ninguna parte de dicho fondo y ordenando que quedara intacto hasta que la participación *pro rata* en él de cada uno de los peticionarios le hubiera sido devuelta.

Del razonamiento que sirvió de base a esta decisión citamos lo siguiente:

"Dicho artículo 5°. en lo pertinente dice lo siguiente: 1. . . . . 2. . . . . 3. 'Todos los sobrantes que se obtengan por concepto de fondos al Concejo Ejecutivo de la Federación Libre, percapitas a la Internacional y fondos del quórum, irán a formar un fondo de emergencia.' 4. Los fondos de emergencia serán usados por la Unión en la forma que estime conveniente, por acuerdo de la mayoría de sus miembros. Los fondos de la Unión responderán también de cualquier negligencia ocasionada en el trabajo que perjudique los intereses de los patronos, se sobrentiende, después de hecha una investigación y por separado sea responsable el maestro de horno, o el maestro director o algunos oficiales sobre quien recaiga la responsabilidad, indemnizarán estos daños y perjuicios.' Admitido como se ha que los cuatrocientos cincuenta dollars que se intentan invertir en la sociedad con la mercantil J. Mir y Cía. para el establecimiento de una tahona, forman, parte del fondo así llamado de emergencia, la cuestión que hay, pues, que resolver, es si constituye o no una emergencia en sentido legal el hecho de que hubiera habido o se temiese que hubiera *lockout* de las panaderías de Guayama, en la época en que se intentó celebrar ese contrato. La palabra 'emergencia' en este sentido ha sido definida por las autoridades en la siguiente forma: 'Emergency.' Una 'emergencia' es un suceso o combinación ocasional de circunstancias que exigen inmediata actuación; una necesidad apremiante, un suceso repentino o inesperado; una exigencia. *Colfax County* v. *Butler County, 120 N. W.* 444 (Neb.) *Parker* v. *City of Monroe, 55 So. 587–9; 128 La. 915* La palabra 'emergencia' se define en el Diccionario de Century como sigue: (2) Un suceso repentino

o inesperado; una ocurrencia o condición imprevista; específica-
mente, una contingencia o complicación de circunstancias perple-
jas; (3) Una ocasión repentina o inesperada para actuar; una
exigencia; una necesidad apremiante. U. S. v. Sheridan Kirk
Contract Co., 149 Fed. 809. 2 Words and Phrases, (2nd Series)
página 255. Hemos encontrado un caso que, si bien no es idéntico
al presente, guarda alguna analogía con el mismo, que es el de
State ex rel., Supreme Lodge, Knights of Pythias vs. Vandiver
(Mo. 1908) 111 S. W. 911-17, en el cual se trataba de interpretar
la palabra 'reserve fund' y se declaró que era sinónima con la pa-
labra 'emergency,' y que una ley que· autoriza a una asociación
fraternal para fines benéficos para mantener, desenvolver y aplicar
un fondo de reservas o emergencias a·los fines de dicha asociación,
no permitiría la expedición de pólizas de seguro no confiscables
(*non-forfeitable*) si bien de acuerdo con sus estatutos podía expedir
otras clases de pólizas. La teoría es el que un fondo de emergencia
o de reserva es un fondo en fideicomiso para ser empleado cuando
ocurra una verdadera emergencia, y no para ser empleado en ne-
gocios lucrativos y aventurados. No hay duda alguna que este es
un fondo en fideicomiso (*express trust*). Véase 39 Cyc. 70-71; 39
Cyc. 90, párrafo B."

Puede admitirse que el fondo en cuestión es un fondo
en común pero nunca se creó ni el objeto era que fuera me-
ramente un depósito conservado intacto hasta que se de-
volviera a cada uno de los miembros que para él habían
contribuído. No hay nada en los autos que indique que
existiera en ningún momento de la historia de la Unión tal
idea final de reembolso.

El plan tenía por fin entre otros, establecer eventual-
mente o en caso de necesidad y como medio de protección y
defensa propia, una panadería cooperativa. Con tal fin en
perspectiva una mayoría de los miembros quedaban cons-
tituídos en únicos y exclusivos jueces respecto a la forma
en que había de emplearse el fondo. Los autos no suminis-
tran ninguna base para la conclusión de que la panadería
cooperativa en contemplación de los miembros incorpora-

dos, en la fecha de la organización, sólo debía adquirirse por compra o construcción y pertenecer exclusivamente a la Unión, o que el fondo de emergencia nunca había de usarse en la explotación de tal propuesta panadería mediante arrendamiento de su dueño, ya por la Unión sola o en sociedad con algún asociado en el negocio que no fuera miembro de la Unión.

No se alega, ni hay ninguna prueba que demuestre que los peticionarios jamás contribuyeron de algún modo a tal fondo con anterioridad a la aprobación de los estatutos incluso el artículo citado por el juez sentenciador, o en alguna otra forma que no sea la establecida en los términos de dicho artículo. No existe, por tanto, lugar para la teoría de alguna violación de una obligación contractual por la adopción de los reglamentos.

La analogía del caso de Missouri a que se ha hecho referencia no es muy aparente; y el sumario no indica que de hacer una lectura de la opinión o examen de la formidable serie de hechos envueltos, obtendríamos alguna luz adicional sobre el particular.

No podemos convenir con la corte inferior en que no existía una emergencia; y cualquier duda sobre este punto debe resolverse a favor de la demandada.

Teniendo en cuenta la amplia discreción conferida a la mayoría de los miembros, una corte de justicia debe negarse a intervenir a menos que esté frente a un verdadero caso de abuso más bien que del ejercicio de una facultad tan ilimitada y tan claramente conferida.

Debe revocarse la sentencia apelada.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Franco Soto.