[Civ. No. 5210. First Appellate District, Division One.—January 20, 1926.]

RUDOLPH SPRECKELS, Respondent, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

[1] MUNICIPAL CORPORATIONS — SAN FRANCISCO CHARTER — SUSPENSION OF LIMITATION UPON TAX RATE—ORDINANCE DECLARING NECESSITY AND EMERGENCY TO EXIST—ACTION TO RECOVER TAXES PAID UNDER PROTEST—NATURE OF CONDITIONS—INFERENCES.—In an action to recover taxes paid to a municipality under an ordinance suspending the charter limitation upon the rate of taxation and declaring a great necessity and emergency to exist by reason of certain conditions recited in said ordinance, where the ordinances for the two previous years were introduced in evidence and found, as the basis for the conclusion that a necessity or emergency then existed, the same facts as those contained in the later ordinance, the trial court might reasonably infer from the findings of the previous ordinances that the board of supervisors was then apprised as to the extent of the injuries to streets and sewers and to the real and personal property owned by the municipality, and being so apprised, that the sums required to provide relief were then ascertained or ascertainable; and these inferences fairly support the conclusion that the conditions declared to exist at the time the later ordinance was passed were foreseen at least as early as two years before, were not sudden or unexpected, and hence did not constitute an emergency within the meaning of the charter.

[2] ID. — ORDINANCES — DECLARATIONS — CHARACTER OF NECESSITY.—In such action, the declaration in the later ordinance that theretofore no adequate provision had been made for the conditions as therein described, in view of the time which had elapsed since the catastrophe giving rise to such conditions and the inferencees which the trial court might reasonably draw from the previous ordinances, admits of a construction which supports the implied conclusion of the trial court that, contrary to the plain meaning of the charter, it was the purpose following such catastrophe to extend the extraordinary taxing power over an indefinite number of years, and that the necessity declared in such later ordinance was not of the pressing and urgent character which would justify the conclusions and acts of the board of supervisors.

[3] ID.—ADDITIONAL TAX TO PREVENT RECURRENCE OF DISEASE—PREVIOUS KNOWLEDGE OF CONDITIONS — JUDICIAL NOTICE — INFERENCES. — In

1. See 24 Cal. Jur. 149.

such action, the levy of an additional tax by the ordinance in question to provide for the continuance of sanitary measures under the direction of the board of health to prevent a recurrence of the bubonic plague was not justified where the necessity declared at the time of the passage of such ordinance arose from conditions known and continuing since three years before, and it was reasonable to imply, not only from the ordinance, but from the geographical situation of the city and the maritime traffic which passes between it and the regions from whence the disease originally came (the latter facts being matters of general knowledge which the trial and appellate courts within the jurisdiction will judicially notice), that the danger declared in such ordinance was in its nature continuous.

[4] ID. — SEGREGATION OF ITEMS OF EXPENDITURE — EMERGENCY CHARACTER OF ITEMS—INFERENCES.—In such action, even if the trial court had been of the opinion that proposed expenditures for fire, police, and school department equipment and for repairs to streets, sewers, and school buildings were for the purpose of meeting a great necessity or emergency, it could not have sustained such items, since the ordinance in question furnished no means of segregating them from others of a nonemergency character; and where the necessity for the equipment arose from the same cause as the other declared needs, had existed for the same length of time, and was not sudden or unexpected, such facts would negative its alleged emergency character and justify the same conclusion as to which the trial court was warranted in drawing as to the proposed expenditures for new construction and the acquisition of lands.

[5] ID.—DETERMINATIONS OF BOARD OF SUPERVISORS—PRESUMPTIONS—EVIDENCE.—In such action, while it will be assumed *prima facie* that the board of supervisors acted upon sufficient inquiry, and the burden rested upon the city to show either that the facts found were untrue or that the conclusions therefrom were unsupported, the determinations of the board were not conclusive but subject to review.

[6] ID.—PRESUMPTIONS—INFERENCES—FINDINGS.—In such action, the inferences drawn by the trial court in favor of the plaintiff fairly overcome the presumptions in favor of the tax levy, and sustain the conclusion that no necessity or emergency within the meaning of the charter was shown.

[7] EVIDENCE — DIFFERENT CONCLUSIONS DEDUCIBLE — APPEAL.—Where fair and impartial minds may draw different conclusions from the evidence though there be no conflict therein, the conclusions drawn by the trial court must be sustained on appeal.

5. See 24 Cal. Jur. 149.

[8] Municipal Corporations—Taxation—San Francisco Charter—Intent—Construction.—It was the evident intention of the San Francisco charter that the power to temporarily suspend the limitation upon the rate of taxation should be exercised for the purpose of meeting such necessities as were temporary in character.

---

(1) 20 C. J., p. 499, n. 8; 28 Cyc., p. 1665, n. 57; 29 Cyc., p. 380, n. 57, 59.  (2) 28 Cyc., p. 1665, n. 57.  (3) 23 C. J., p. 59, n. 22, p. 84, n. 5; 28 Cyc., p. 1665, n. 57.  (4) 28 Cyc., p. 1665, n. 57.  (5) 37 Cyc., p. 1189, n. 11.  (6) 28 Cyc., p. 1709, n. 30; 37 Cyc., p. 1189, n. 11.  (7) 4 C. J., p. 845, n. 78, p. 854, n. 65.  (8) 28 Cyc., p. 1665, n. 57.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James H. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

George Lull, City Attorney, John J. O'Toole, City Attorney, and Maurice T. Dooling, Jr., Assistant City Attorney, for Appellant.

Cushing & Cushing, Delger Trowbridge and William H. Gorrill for Respondent.

CASHIN, J.—An action to recover taxes paid under protest, it being alleged as the ground for recovery that the levy was in contravention of the provisions of the charter of the City and County of San Francisco restricting the taxing power of the municipality.

Section 11, chapter 1 of article III of the charter at the time of the levy provided that, exclusive of certain special taxes, the tax levy for any year "shall not exceed the rate of one dollar to each one hundred dollars valuation of the property assessed," this provision being qualified by the provisions of section 13 of the same chapter, which read as follows:

"The limitation in section eleven of this charter upon the rate of taxation shall not apply in case of any great necessity or emergency. In such case the limitation may be temporarily suspended so as to enable the supervisors to

---

8.   See 2 Cal. Jur. 934.

provide for such necessity or emergency. No increase shall be made in the rate of taxation authorized to be levied in any fiscal year unless such increase be authorized by ordinance passed by the unanimous vote of the supervisors and approved by the mayor. The character of such necessity or emergency shall be recited in the ordinance authorizing such action, and be entered in the journal of the board. . . . "

In preparing the tax levy for the fiscal year 1910–11 the supervisors of the City and County adopted two ordinances, the material portions of the first being as follows:

"Section 1. It is hereby recited, determined and declared that a great necessity and emergency exists within the city and county of San Francisco, which requires that the limitation of taxation contained in section 11, chapter 1 of article III of the charter of said city and county be temporarily suspended, and that the character of such necessity and emergency is as follows, to wit:

"On the 18th day of April, 1906, a large number of the public buildings and other structures, and much of the fire department equipment of said city and county were destroyed by fire, and on said day a large extent of the public sewers of said city and county were damaged and destroyed by earthquake; that a large extent of the public streets of said city and county were damaged by the combined effects of fire and earthquake; also there is danger that the bubonic plague, prevalent in 1907, may recur and provision should be made to prevent such recurrence; that it has been impossible to pave, repave, and repair streets, reconstruct and repair sewers, construct and repair the public buildings destroyed and damaged as aforesaid in April, 1906, from the appropriations heretofore made, and the great necessity and emergency hereby declared to exist has not been adequately provided for by previous tax levies made by the board of supervisors.

"Section 2. That by reason of the great necessity and emergency herein set forth large sums of money will be required to be expended by the city and county during the fiscal year ending June 30, 1911, for the paving, grading, repaving, and repairing of streets, for the reconstruction and repair of sewers, construction of and repairs to public buildings, for construction and equipment of fire depart-

ment buildings, for the purchase of land for fire department buildings, for the construction of, repairs to, and equipment of school department buildings, and for the purchase of lands for police department purposes, and for the continuation and enforcement of sanitary measures. That the large sums required for the aforesaid purposes cannot be obtained from the annual income and revenue of the city and county, and said necessary expenditures cannot be made without temporarily suspending the limitation upon the rate of taxation provided for in section 11 of chapter I of article III of the charter of said city and county.''

The ordinance further declared that for the reasons therein stated the limitation upon the rate of taxation be temporarily suspended, and that an additional tax of twenty-nine cents upon each one hundred dollars valuation be levied.

The second ordinance, which levied the tax, apportioned to the revenue to be derived therefrom as follows:

For paving, repaving, grading, and repairs to streets,
    for reconstruction of and repairs to sewers, and
    for construction and repairs to public buildings
    and other structures, except school buildings...22 cents
For construction and equipment of fire department
    buildings, and for purchase of lands for fire
    department purposes ......................$2\frac{1}{2}$ cents
For reconstruction and repairs to and equipment of
    school department buildings ................. 2 cents
For construction and equipment of police department
    buildings, and for purchase of lands for police
    department purposes ....................... 2 cents
For continuance of sanitary measures............. $\frac{1}{2}$ cent.

The protests filed by respondent and his assignor included as the grounds thereof those here urged against the validity of the levy, and were followed by demands for repayment, upon noncompliance with which the present action was filed.

At the trial the ordinances mentioned, together with ordinances adopted during the years 1907, 1908, and 1909, were introduced in evidence, and, according to the language of the decision, no other evidence was received relating to the subject of an emergency or necessity within the meaning of the charter provision mentioned. The ordinance of 1907

declared the necessity for an additional levy for the purpose, among others not included in the later ordinances, of repairing the streets of the City. The ordinances of the years 1908 and 1909 stated in addition thereto the same facts as are contained in the ordinance here in question as the basis for the conclusion of the board in each of said ordinances that a necessity and an emergency within the meaning of the charter existed requiring an increase in taxation over the rate otherwise limited.

From the evidence the trial court concluded that neither the necessity nor the emergency essential to a valid suspension of the charter limitation existed in 1910, and entered judgment for plaintiff, from which judgment defendant appealed.

It is contended by appellant that the evidence was insufficient to overcome the *prima facie* effect of the findings of the board; that the latter fairly support the board's conclusions, and that the judgment of the trial court is unsupported; and by respondent that, in addition to inferences reasonably to be drawn from the ordinances mentioned, any facts which that court might judicially notice should be considered on appeal as having the effect of evidence supporting the judgment.

The ordinance in question declared that the conditions found to exist in 1910, were created during the year 1906. In *San Christina etc. Co.* v. *San Francisco*, 167 Cal. 762 [52 L. R. A. (N. S.) 676, 141 Pac. 384], it is held that by the use of the adjective "great" the charter means a necessity or emergency of grave character and serious moment, the word "emergency" being therein defined as an unforeseen occurrence or combination of circumstances which calls for an immediate action or remedy, a pressing necessity, an emergency, the word being also defined as a "sudden or unexpected happening" (15 Cyc. 452; *Colfax County* v. *Butler Co.*, 83 Neb. 803 [120 N. W. 444]). Webster's International Dictionary defines the word "necessity" as "the quality or state of being necessary, in its primary sense signifying that which makes an act or event unavoidable." (*St. Louis etc. Co.* v. *Wannamaker & Brown*, 115 Mo. App. 270 [90 S. W. 737, 743].)

[1] The ordinances of 1908 and 1909 found, as the basis for the conclusion that a necessity or emergency then ex-

isted, the same facts as those contained in the ordinance in 1910. From the findings in the ordinance first mentioned the trial court might reasonably have inferred that the board was then apprised as to the extent of the injuries to streets and sewers and to the real and personal property owned by the municipality; and, being so apprised, that the sums required to provide relief were then ascertained or ascertainable. These inferences fairly support the conclusion that the conditions declared to exist in 1910 were foreseen at least as early as the year 1908, were not sudden or unexpected, and hence did not constitute an emergency as defined above within the meaning of the charter (*Mallon* v. *Water Commrs.*, 144 Mo. App. 104 [128 S. W. 764] ; *Parker* v. *Mayor etc. of Monroe*, 128 La. 951 [55 South. 587]).

It was also declared in the latter ordinance that theretofore no adequate provision had been made for the conditions as described. As stated, these conditions were known and had continued over a period of years, during which, as may fairly be inferred, the amounts required to furnish a remedy were ascertainable and as a reasonable probability had been ascertained.

[2] This declaration, in view of the time which had elapsed since the catastrophe of 1906 and the above suggested inferences, admits of a construction which supports the implied conclusion of the trial court that, contrary to the plain meaning of the charter (*San Christina etc. Co.* v. *San Francisco, supra*), it was the purpose following the occurrence mentioned to extend the extraordinary taxing power over an indefinite number of years, and that the necessity declared in 1910 was not of the pressing and urgent character which would justify the conclusions and acts of the board (*Colfax County* v. *Butler County, supra*).

[3] Among the purposes for which the additional tax was levied was that of providing for "the continuance of sanitary measures under the direction of the board of health etc." It not being contended that cases of bubonic plague existed within the municipality after the year 1907, the measures declared necessary by the ordinance in evidence were wholly preventive, and similar in character to other activities of the board of health. The needs of the board, in the absence of epidemics, were not unlike those

of the police and fire departments, and could with reasonable certainty be anticipated. Where, as here, the necessity declared in 1910 arose from conditions known and continuing since the year 1907 the trial court might fairly conclude that the situation alleged was not unforeseen. That the danger declared was in its nature continuous was reasonably to be implied not only from the ordinance, but from the geographical situation of the City and the maritime traffic which passes between it and the regions from whence the disease originally came, the latter facts being matters of general knowledge which the trial and appellate courts within the jurisdiction will judicially notice (*Varcoe* v. *Lee,* 180 Cal. 338 [181 Pac. 223]); and though it may be said that action by the board of health was necessary in this as in similar situations, the case presented is analogous to that of *Burr* v. *San Francisco,* 186 Cal. 508 [17 A. L. R. 581, 199 Pac. 1034], wherein it was held that an increase in the annual expenses of the City caused by new activities of its government was insufficient to constitute necessity or emergency within the meaning of its charter.

[4] Should it be urged that the need for fire, police, and school department equipment was such as to fairly come within the charter provision here considered, the sums required therefor were not segregated from the cost of construction of buildings in which such equipment was to be installed, or, in the case of the police and fire departments, from that of the acquisition of lands. The same is true of the cost of repairs to streets, sewers, and school buildings, included in amounts levied for the additional purposes of paving and grading streets, the construction of sewers, and the reconstruction of school buildings. Even if the court, therefore, had been of the opinion that the proposed expenditures for equipment or repairs were for the purpose of meeting a great necessity or emergency, it could not have sustained these items since the ordinance furnished no means of segregating them from others of a nonemergency character. Moreover, it is apparent that the necessity for the equipment arose from the same cause as the other declared needs, had existed for the same length of time, and was not sudden or unexpected—all of which facts would negative its alleged emergency character, and justify the same conclusion as to it which the court was warranted in

drawing as to the proposed expenditures for new construction and the acquisition of lands.

[5] While it will be assumed *prima facie* that the board acted upon sufficient inquiry (*In re Hoffman,* 155 Cal. 114 [132 Am. St. Rep. 75, 99 Pac. 517]; *Morgan* v. *Long Beach,* 57 Cal. App. 134, 138 [207 Pac. 53]), and the burden rested upon appellant to show either that the facts found were untrue or that the conclusions therefrom were unsupported (*Savings & Loan Assn.* v. *San Francisco,* 146 Cal. 673 [80 Pac. 1086]; *San Francisco* v. *Flood,* 64 Cal. 504, 508 [2 Pac. 264]), its determinations were not conclusive but subject to review (*San Christina etc. Co.* v. *San Francisco, supra*).

The evidence in the instant case was without conflict, and the findings rest upon inferences drawn from the declarations of the board, together with circumstances judicially noticed; and though the facts would support inferences favorable to appellant, those drawn by the court also find reasonable support therefrom. [6] They fairly overcome the presumptions mentioned, and sustain the conclusion that no necessity or emergency within the meaning of the charter was shown. [7] Where fair and impartial minds may draw different conclusions from the evidence though there be no conflict therein, the conclusions drawn by the trial court must be sustained on appeal (*Kelly* v. *Brown,* 2 Cal. Unrep. 536 [8 Pac. 38]; *Fanning* v. *Green,* 156 Cal. 279 [104 Pac. 308]; *Bettens* v. *Hoover,* 12 Cal. App. 313 [107 Pac. 329]; *Pratt* v. *Phelps,* 23 Cal. App. 755 [139 Pac. 906]).

[8] In conclusion it may be said that it was the evident intention of the charter that the power to temporarily suspend the limitation upon the rate of taxation should be exercised for the purpose of meeting such necessities as were temporary in character. Provision is therein made for extraordinary conditions not within the definition of a "great necessity or emergency" requiring the acquisition of lands or the construction of any permanent building or improvement, the cost of which in addition to the other expenses of the City and County will exceed the revenue raised by ordinary taxation in any one year, by directing the supervisors by ordinance to submit a proposition to incur a bonded indebtedness to the electors of the municipality (Charter, art. XVI, sec. 29). As observed by the court in

*San Christina etc. Co.* v. *San Francisco, supra,* if the revenues sought to be raised by the City do not fairly come within the purview of an emergency tax measure the necessity must be met either by the issuance of bonds or by an amendment to the charter, and no argument of hardship or inconvenience will justify a court in ignoring its protective provisions.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 18, 1926.